JAY ESCOETT, PLAINTIFF-APPELLANT, v. ALDECRESS
COUNTRY CLUB, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued September 20 and 27, 1954—Decided November 8, 1954.

*Mr. Samuel M. Coombs, Jr.*, argued the cause for the appellant (*Messrs. Carpenter, Gilmour & Dwyer*, attorneys; *Mr. Robert R. Whelan*, on the brief).

*Mr. Milton Rosenkranz* argued the cause for the respondents Donald J. Flamm and Donmor Realty Corporation; *Messrs. Losche & Losche*, attorneys for respondents Aldecress Country Club, *et al.*, *Mr. George F. Losche*, of counsel; *Messrs. Eisenstein & Eisenstein*, attorneys for respondents Milton Flamm and William Mangin, *Mr. Louis Eisenstein*, of counsel.

The opinion of the court was delivered by

JACOBS, J. On December 29, 1953 the plaintiff, a member of the Aldecress Country Club, filed a complaint in the

Chancery Division on behalf of himself and all other members who desired to join the proceeding. It alleged substantially the following: (1) the defendant Donald J. Flamm conveyed land to the defendant Donmor Realty Corporation and the defendant Aldecress Country Club is now in possession as tenant; (2) Flamm has been the sole stockholder of Donmor and has controlled its board of directors; (3) Flamm acquired possession of the books and records of the then defunct Aldecress and without election and in violation of its by-laws, installed the other named individual defendants as its officers and trustees; (4) Flamm has assumed the position of sole controlling trustee of Aldecress which has "a gross annual income in excess of the sum of $400,000.00 through membership, dues, operation of its restaurant, swimming pool, golf range, sport shop and the sale of liquor at its bars"; (5) Flamm, his servants and agents, "have diverted the assets and property of the Aldecress Country Club and defrauded its membership" by, (a) causing the aforementioned conveyance pursuant to a plan and scheme to divert the assets of Aldecress, (b) "perpetrating in office the officers and trustees" of Aldecress, (c) "imposing themselves upon said corporation for their personal gain and deriving large salaries and income therefrom without the lawful authority of the membership," (d) "deriving other personal benefits and things of value such as eating at its restaurants, receiving refreshments without charge and membership privileges," (e) causing Aldecress "to make substantial permanent capital improvements to the real estate owned by the Donmor Realty Corporation," (f) "illegally avoiding the payment of income taxes to the Bureau of Internal Revenue of the United States of America on income diverted to Donmor Realty Corporation, rightfully belonging to Aldecress Country Club, a non-profit corporation," (g) "failing to render an annual statement of receipts and disbursements or any other form of accounting to the membership of its vast income and profit, notwithstanding a demand," (h) "treating and mishandling the business affairs of the Aldecress Country Club as if the

same were his own"; (6) the action is brought "to enforce the rights of the defendant, Aldecress Country Club, because the said defendant has failed to enforce the same"; (7) on December 2, 1953 the plaintiff mailed a letter to Aldecress charging it with the allegations set forth in the complaint and demanding an accounting of the income and profit belonging to him and the other members and on December 2, 1953 he sent a telegram "for an accounting of the commercial enterprises and diversion of assets"; (8) on November 15, 1953 he mailed a letter to all other members of Aldecress known to him, "calling to their attention the diversion of assets and profit derived by the defendants and their failure to hold elections and account."

The complaint demanded judgment that the defendants answer "and render an accounting of all sums of money or things of value belonging to the Aldecress Country Club"; that judgment be entered for the amount found due to Aldecress; that a receiver be appointed; that Aldecress be dissolved and reorganized under the General Corporation Act; that Aldecress and Donmor account to all the members of Aldecress "for their lawful share of the profits, income or assets"; and that such other relief as may be equitable and just be granted. The complaint bore a short verification by the plaintiff which stated that the "statements contained therein are true to the best of my knowledge, information and belief."

On February 10, 1954 the Chancery Division directed that a list of the members of Aldecress be furnished to the plaintiff's attorney who was directed to mail to each of the members a notice of the pendency of the plaintiff's action, together with a copy of his complaint. The order contained a provision that the list of members was "to be used for no other purpose." Thereafter the defendants moved for an order dismissing the plaintiff's complaint because it failed to meet the requirements of *R. R.* 4:36–2 and failed to state a claim upon which relief could be granted. On March 9, 1954 the trial judge addressed a letter to counsel for the parties which concluded as follows:

"Assuming for the purpose of this motion the truth of the allegation of the complaint that the trustees of Aldecress Country Club were not properly chosen and were the puppets of the defendant Donald J. Flamm, the plaintiff would be relieved from the necessity of appealing to the trustess for action. But that would not relieve the plaintiff from the duty of seeking aid from the membership body. This, so far as the complaint discloses, he failed to do. Additionally, the verification is on information and belief.

The complaint is defective and will be stricken."

Under date of March 12, 1954 the plaintiff addressed a notice that he would move for an order permitting the filing of an amended complaint in the revised form annexed thereto. Paragraph (8) of the amended complaint set forth that on November 15, 1953 the plaintiff had mailed a letter to all other members of Aldecress known to him, calling to their attention the diversion of assets and profit derived by the defendants and their failure to hold elections and account; and having so informed members whose names he at the time knew, he made no other efforts to secure from the members such action as he desired since he deemed it unnecessary and futile to make such demand for the following reasons: (a) he had requested a membership list from the secretary of Aldecress but such list had been refused to him, (b) he had requested a copy of the by-laws of Aldecress from its officers and trustees and it had been refused to him, (c) not knowing the contents of the by-laws he believed that a meeting of the members called to elect new trustees might well have been futile, (d) and he believed that a majority of the members were hand-picked by Flamm or the other defendants who were subservient to him and their memberships were cancellable at the behest of Flamm. He asserted that these "facts are borne out by the fact that certain members whom the plaintiff knows, are afraid to cooperate with him because of the possibility that they may lose their membership and dues which they have paid in advance for the current year." The affidavit annexed to the amended complaint asserted that the plaintiff did "hereby verify on my own personal knowledge all allegations set forth therein except such allegations as are specifically

alleged to be on information and belief. Such allegations so alleged to be on information and belief I believe them to be true."

On March 19, 1954 the Chancery Division entered an order which, after setting forth that the court had determined that the complaint was defective in that it failed to allege that the plaintiff had sought aid from the membership body as required by *R. R.* 4:36–2 and was not properly verified as required by the same rule, granted the defendants' motions and directed that the complaint be dismissed. On the same day a further order was entered which denied the plaintiff's motion for leave to file an amended complaint. Thereafter the plaintiff filed notice of appeal to the Appellate Division from the orders dismissing the complaint and denying leave to file the amended complaint. We certified his appeal on our own motion under *R. R.* 1:10–1.

The primary question presented by the parties bears on the effect to be given to the provision in *R. R.* 4:36–2 that a shareholder's complaint seeking to enforce a secondary right must be set forth with particularity "the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort." Since the quoted language is identical with and was taken from *Federal Civil Rule* 23(*b*), we shall review briefly the history and interpretation of the federal rule for such aid as might be furnished in reaching a just and proper construction of our own rule. See *Fritts v. Kuhl*, 51 *N. J. L.* 191, 199 (*Sup. Ct.* 1889); *Urian v. Urian*, 31 *N. J. Super.* 608, 619 (*App. Div.* 1954); *Mayflower Industries v. Thor Corp.*, 15 *N. J. Super.* 139, 155 (*Ch. Div.* 1951), affirmed 9 *N. J.* 605 (1952); *Lenzner v. City of Trenton*, 22 *N. J. Super.* 415, 424 (*Law Div.* 1952); *Teslut v. Teslut*, 32 *N. J. Super.* 95, 99 (*App. Div.* 1954).

In *Hawes v. Oakland*, 104 *U. S.* 450, 26 *L. Ed.* 827 (1882), a New York shareholder of a California corporation brought an action in a federal court alleging that his corporation had been complying with improper demands by the City of Oak-

land, California, that it be furnished water without compensation. His complaint alleged he had made demand on the board of directors that it take action to prevent the city from taking water without compensation but the board had declined to institute any proceedings. The Supreme Court affirmed the dismissal of the complaint in an opinion by Justice Miller which voiced the court's belief that the medium of the stockholder's derivative action had been unduly invoked to confer apparent diversity of citizenship in cases which should rightly have been presented to the state courts rather than the federal courts. After reviewing types of grievances which might justifiably call for stockholders' derivative actions, he expressed the need for a clear showing by the stockholder that before he instituted his action he had exhausted the available means to obtain redress within the corporation, saying:

"He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it."

To implement the decision in *Hawes v. Oakland, supra,* the Supreme Court adopted *Equity Rule* 94. See *City of Quincy v. Steel,* 120 *U. S.* 241, 245, 7 *S. Ct.* 520, 30 *L. Ed.* 624, 626 (1887). Its provisions were later carried over into *Equity Rule* 27 and, finally, into *Civil Rule* 23. See 3 *Moore's Federal Practice* (*2d ed.* 1948), 3489. The requirement in the rule that the plaintiff shall set forth with particularity his efforts to secure action from the managing directors or trustees (or his reasons for not making such efforts) has not given rise to any significant criticism. The right of action being asserted is that of the corporation and its managing directors are the ones charged with the responsibility of enforcing it; only when they have in abuse of their management powers defaulted in asserting the

corporate right may the stockholders seek to enforce it. See 13 *Fletcher, Corporations* (1943), 295, 320; *Ballantine, Corporations* (1946), 345. Accordingly, it is clear that the stockholder may not seek recourse from the courts until after he has made appropriate demand on the directors that they institute action, unless such demand would be useless. However, *Rule 23* goes further and provides that the complaint show the plaintiff's efforts to secure action not only from the directors but also "if necessary, from the shareholders." The meaning and worth of this requirement have been the subjects of considerable discussion. See *Ballantine, supra; Stickells, Derivative Suits—The Requirement of Demand Upon the Stockholders,* 33 *B. U. L. Rev.* 435 (1953); Note, *Necessity of Application to Shareholders in Derivative Suits,* 6 *U. of Chi. L. Rev.* 269 (1939).

In *Continental Securities Co. v. Belmont,* 206 *N. Y.* 7, 99 *N. E.* 138, 51 *L. R. A., N. S.,* 112 (*Ct. App.* 1912), the court held that a stockholder's action seeking an accounting from directors who were alleged to have fraudulently issued stock could be maintained without prior application to the general body of stockholders; it expressed the view that its holding was not inconsistent with *Hawes v. Oakland, supra,* and that it would be unreasonable to require application to the stockholders in situations where they had no power to remedy the wrong. The *Belmont* case has often been cited for the proposition that resort to stockholders is required only when they could effectively ratify or approve the action complained about and thereby render the judicial proceeding futile. See Stone, J. in *Rogers v. Guaranty Trust Co.,* 288 *U. S.* 123, 144, 53 *S. Ct.* 295, 77 *L. Ed.* 652, 663 (1933); *Steinberg v. Hardy,* 90 *F. Supp.* 167, 170 (*D. C. Conn.* 1950); *Comment, When Demand on Shareholders is a Prerequisite to Maintenance of Suit,* 48 *Mich. L. Rev.* 87, 92 (1949). In *Steinberg v. Adams,* 90 *F. Supp.* 604, 609 (*D. C. N. Y.* 1950), the court held that *Rule 23(b)* required a showing of recourse to stockholders only "if necessary"; that recourse to stockholders was necessary only when stockholder action was feasible; and that since in the case before

it the illegal acts complained of could not be ratified by the stockholders no application to them was required. Notwithstanding the foregoing, most of the federal cases have given wider sweep to the rule and have required application to the general body of stockholders even in situations where non-ratifiable fraudulent actions have been involved. They point to the possibility of stockholder action other than ratification, such as the election of new directors, and assert flatly that a stockholder's derivative action should not be entertained except where recourse to both directors and stockholders has been either exhausted or excused. See *Stone v. Holly Hill Fruit Products*, 56 *F.* 2d 553, 554 (5th *Cir.* 1932); *Abraham v. Parkins*, 36 *F. Supp.* 238, 240 (*D. C. Pa.* 1940); *Varanelli v. Wood*, 9 *F. R. D.* 61, 12 *F. R. Serv.* 328 (*D. C. N. Y.* 1949); *Bruce & Co. v. Bothwell*, 8 *F. R. D.* 45, 11 *F. R. Serv.* 461 (*D. C. N. Y.* 1948). *Cf. Watts v. Vanderbilt*, 45 *F.* 2d 968 (2d *Cir.* 1930); *Moore, supra*, 3528; 72 *A. L. R.* 628, 632 (1931). In *Berg v. Cincinnati, Newport & Covington R. R. Co.*, 56 *F. Supp.* 842, 845 (*D. C. Ky.* 1944), the court suggested that it had general discretionary authority to waive the requirement in *Rule* 23(*b*) of application to stockholders, on grounds of impracticability or other persuasive cause. See also *Delaware & Hudson Co. v. Albany & Susquehanna R. R. Co.*, 213 *U. S.* 435, 452, 29 *S. Ct.* 540, 545, 53 *L. Ed.* 862, 869 (1909), where the Supreme Court noted that the rule was "intended to have practical operation, and to have that it must, as to its requirements, be given such play as to fit the conditions of different cases."

Although the stockholder's derivative action has had a long history in our own State, no requirement for prior application to the general body of stockholders seems to have been imposed prior to the adoption of our new procedural rules. *Rule* 3:23–2—now *R. R.* 4:36–2. See *Knoop v. Bohmrich*, 49 *N. J. Eq.* 82 (*Ch.* 1891), affirmed 50 *N. J. Eq.* 485 (*E. & A.* 1892); *Laurel Springs Land Co. v. Fougeray*, 50 *N. J. Eq.* 756 (*E. & A.* 1893); *Siegman v. Maloney*, 65 *N. J. Eq.* 372 (*E. & A.* 1903); *Groel v. United Electric*

*Company of New Jersey*, 70 *N. J. Eq.* 616 (*Ch.* 1905); *Toothe v. Dozier*, 96 *N. J. Eq.* 46 (*Ch.* 1924); *Holub v. Jacobwitz*, 123 *N. J. Eq.* 308 (*Ch.* 1937). In *Siegman v. Maloney, supra*, Chief Justice Gummere stated for the Court of Errors and Appeals that the right of a stockholder to prosecute an action on the corporation's behalf "can only be maintained by showing a refusal, either actual or presumptive, by the board of directors to do so," and where there has been no such refusal the burden is on the stockholder to show facts justifying the conclusion that "an application to the board to prosecute would be futile." Nowhere in his opinion or in the other pertinent decisions was any suggestion to be found that application to the general body of stockholders must be made or excused.

The numerous stockholders' derivative actions in our State gave rise to demands that greater restrictions be imposed upon their maintenance. In 1945 the Legislature made provisions for the stockholder's posting of security for reasonable expenses (*R. S.* 14:3–15) as a measure of " 'protection for corporations and their officers and directors, against "strike suits." ' " See *Beneficial Industrial Loan Corp. v. Smith*, 170 *F. 2d* 44, 51 (*3d Cir.* 1948), affirmed *sub nom. Cohen v. Beneficial Industrial Loan Corp.*, 337 *U. S.* 541, 69 *S. Ct.* 1221, 93 *L. Ed.* 1528 (1949). There is little doubt that abuses had arisen which called for legislative intervention but it would be wholly erroneous to imply therefrom that stockholders' derivative actions generally serve no justifiable purposes and should be considered with substantial disfavor by the courts. In *Cohen v. Beneficial Industrial Loan Corp., supra*, 337 *U. S.* at *page* 548, 69 *S. Ct.* at *page* 1226, Justice Jackson aptly pointed out that the stockholder's derivative action "has afforded no small incentive to avoid at least grosser forms of betrayal of stockholders' interests," and more recently Dean Tunks found occasion to remark that until legislatures became "overworried" concerning strike suits the stockholder's derivative action was "the greatest engine for enforcing regularity in corporate management in all Anglo-American jurisprudence." *Tunks, Corporations,*

9 *Rutgers L. Rev.* 145, 154 (1954). See *Pomerantz v. Clark,* 101 *F. Supp.* 341, 346 (*D. C. Mass.* 1951). It is to be noted that in *R. S.* 14:3–15 no attempt whatever was made by the Legislature to prescribe the steps which must be taken by the stockholder within the corporation before instituting his derivative action.

 In 1948 this court, acting under the authority of *Article* VI, *Section* II, *paragraph* 3 of the 1947 *Constitution,* promulgated its procedural rules including the requirement in *Rule* 4:36–2 that the complaint in a stockholder's derivative action set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort. Here for the first time in our State appeared the additional requirement for application to the general body of stockholders; it is clear that in its adoption the court contemplated that ordinarily a stockholder would be required to seek or excuse relief not only from directors but also from the general body of stockholders before he instituted a derivative action. And we do not read into the rule any blanket exemption in situations where the wrongs complained of are not subject to formal ratification by the stockholders; even there the stockholder may, before instituting his action, be profitably expected to call upon the general body of stockholders for support which may be in the form of internal corporate action or in joinder in his court action. As the terms of the rule itself indicate, the requirement of application to the general body of stockholders is not absolute and will readily give way in the interests of justice. *Cf. Waldor v. Untermann,* 10 *N. J. Super.* 188, 191 (*App. Div.* 1950). Thus, resort to the general body of stockholders would be unnecessary where it would jeopardize the cause of action or where it affirmatively appeared to be futile or impracticable or otherwise unwarranted. Much will depend on the particular circumstances in each case and the rule must be applied practically and flexibly to the end that while corporations and their officials

are to receive reasonable measures of protection against strike suits, they are not to be substantially immunized from accounting to their stockholders for mismanagement.

We find no merit to the suggestion that the requirement of application to the general body of stockholders constitutes a matter of substantive law which the court had no power to adopt in the form of a procedural regulation. The cause of action is the corporation's and the stockholder is authorized to maintain it only when the corporation has improperly failed to do so. A requirement that the stockholder make application to the other stockholders before he institutes action on the corporation's behalf does not add to or detract from the substance of the cause of action. The requirement is procedural in nature and was properly adopted within the constitutional authority of the court. See *H. F. G. Co. v. Pioneer Publishing Co.*, 162 *F. 2d* 536 (*7th Cir.* 1947); *Galdi v. Jones*, 141 *F. 2d* 984, 992 (*2d Cir.* 1944); *Perrott v. United States Banking Corp.*, 53 *F. Supp.* 953, 956 (*D. C. Del.* 1944). *Cf. Cohen v. Beneficial Industrial Corp., supra; Goodbody v. Delaney*, 80 *N. J. Eq.* 417, 419 (*Ch.* 1912). See also *Stickells, supra,* at 449; *Fletcher, supra,* at 298.

We come now to the application of *R. R.* 4:36–2 to the particular facts presented in the instant matter. The amended complaint was submitted to the trial court before the order dismissing the original complaint was entered. In the light of our liberal amendment procedure (*R. R.* 4:15–1) its filing should have been permitted if it corrected the alleged infirmities in the original complaint. See *Thermoid Co. v. Consolidated Products Co., Inc.*, 7 *N. J.* 283, 289 (1951); *Mayflower Industries v. Thor Corp., supra,* at 177. It charged that the alleged primary wrongdoer, Flamm, selected and dominated the trustees; the trial court found that demand on the trustees was excused and no attack is now made on that finding. It also charged that most of the members were hand-picked by Flamm; that the plaintiff had mailed a letter to all members known to him; that he had requested a membership list and a copy of the by-laws

from the secretary of Aldecress but they were refused to him; and that certain members are afraid to cooperate because they may lose their membership and advance dues which they have paid. Aldecress is not an ordinary corporation engaged in business for the profit of its stockholders. It is a non-profit membership corporation which operates a golf club. When the plaintiff requested copies of the membership list and by-laws he clearly should have received them; the denial of his request was suggestive of arbitrary and unwholesome concealment. Having been refused the membership list he could do little more than communicate with the members he knew and this he says he did. He also says that amongst the members he knew were those who refused to cooperate for fear of losing their membership; unlike stockholders in ordinary business corporations, members of the club may seriously endanger their continuing status by their participation in derivative litigation. The defendants suggest that the plaintiff could have obtained the membership list through judicial process before he instituted his action. But there is no just reason why he should have been subjected to the delay and expense of any other independent judicial proceedings. Rightly or wrongly he entertained the belief that there were wrongdoings which should be redressed. He communicated with Aldecress seeking that the alleged wrongdoers be brought to account. He sought the membership list and the by-laws, presumably with the view of making appropriate application to the membership at large. When these were improperly refused he instituted his derivative action seeking a full judicial inquiry and in all justice he should not be subjected to further procedural requirements as conditions precedent to the mere entertainment of his action. If, as may well be, the asserted wrongdoings have no foundation whatever, the defendants will have expeditious opportunity after the plaintiff has fairly had his day in court, to obtain complete vindication and relief by judgment of dismissal resting on the absence of merit rather than upon procedural deficiency. *Cf. Ciocca v. Hacker*, 4 *N. J. Super.* 28, 33 (*App. Div.* 1949), where the court rightly referred to

the general policy against procedural frustrations of determinations on the merits as "implicit in the philosophy of our new judicial structure and rules." See *R. R.* 4:1-2 and the Annotations thereto in 2 *Schnitzer and Wildstein, New Jersey Rules Service* (1954).

We are satisfied that the trial court erred in its determination that the plaintiff was obliged to go further in seeking aid from the membership body; and we are also satisfied that it erred in its determination that the verification was insufficient because it was on information and belief. *R. R.* 4:36-2 provides that the complaint "shall be verified by oath"; in fact it was so verified. The verification attached to the amended complaint stated that the plaintiff verified on his own personal knowledge all allegations set forth therein except those alleged on information and belief and as to those he believed them to be true. The rule does not expressly require that the sources of the information and belief be set forth. The plaintiff did not seek any extraordinary *ex parte* or *ad interim* relief and the purpose of the verification was simply to evidence the *bona fides* of his proceeding and the fulfillment of the specific requirements prescribed by the rule. It would in nowise advance the interests of justice to dismiss summarily for lack of proper verification the stockholder's derivative action seeking a full judicial inquiry into alleged wrongdoings by the managing officials, where the affidavit annexed to the complaint clearly set forth that the plaintiff verified the truth of all of the allegations except those alleged on information and belief which he asserted he believed to be true. *Cf. R. R.* 4:11 and procedural forms, particularly 30 and 36; *Tiene v. Jersey City,* 13 *N. J.* 478, 489 (1953).

The defendants seek affirmance of the lower court's action on the ground that even apart from the requirements of *R. R.* 4:36-2 the complaint (as well as the amended complaint) fails on its face "to state a claim upon which relief can be granted." The allegations are very general and inartistic but, in the light of our modern procedural rules and their broad discovery provisions, we consider them suffi-

cient to withstand final dismissal on the ground stated. See *Puccio v. Cuthbertson*, 21 *N. J. Super.* 544, 549 (*App. Div.* 1952); *Cabakov v. Thatcher*, 27 *N. J. Super.* 404, 408 (*App. Div.* 1953). The plaintiff is in effect charging that Flamm (acting through himself and his subservient officers and trustees) has been mulcting Aldecress through the payment of excessive salaries and the non-payment of proper charges, through its making of substantial capital improvements to the real estate owned by Flamm's company, Donmor Realty Corporation, through the diversion of its income to his company, Donmor Realty Corporation, and through mismanagement of its affairs for his own private benefit. The defendants may readily obtain elaboration and specification of these charges. See *R. R.* 4:12–5. There are other allegations of direct wrongdoing by Aldecress such as its operation in avoidance of franchise taxes and in violation of liquor laws and regulations. While the defendants attack these allegations as not being properly part of a stockholder's derivative action, they are related to the mismanagement charges made against Flamm and his subservients; in any event, their inclusion would not afford proper basis for judgment of dismissal.

The orders entered in the Chancery Division dismissing the complaint and denying leave to file the amended complaint are:

Reversed.

*For reversal*—Chief Justice Vanderbilt, and Justices Heher, Oliphant, Burling, Jacobs and Brennan—6.

*For affirmance*—Justice Wachenfeld—1.