**Alexander ROGERS, Plaintiff,**

v.

**AMERICAN CAN CO. et al., Defendants.**

**Civ. A. No. 684–58.**

United States District Court
D. New Jersey.
Sept. 27, 1960.

Milton, McNulty & Augelli, by Charles J. Milton and Allan H. Klinger, Jersey City, N. J., for plaintiff.

Pitney, Hardin & Ward, by Donald B. Kipp, Newark, N. J., for American Can Co.

Stryker, Tams & Horner, by Emory C. Risley, Newark, N. J., for Metal & Thermit Corp.

Clapp & Eisenberg, by Alfred C. Clapp, Newark, N. J., for C. J. Beasley.

HARTSHORNE, District Judge.

Plaintiff, Alexander Rogers, a stockholder of Metal & Thermit Corporation [hereinafter called M & T], brings a derivative action on behalf of M & T against American Can Co. [hereinafter called Canco] and eight of twelve directors of M & T, some of whom are connected with Canco. M & T is also named as a defendant inasmuch as it has been unable to independently pursue this suit on its own behalf, and so that it will be a party to the action and subject to any orders of the Court as a result thereof. No relief is sought against M & T, but solely against the named directors and Canco. The relief sought is both injunctive to prevent continuation of alleged antitrust violations, and for treble damages, the action being instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C.A. §§ 15 and 26, the jurisdictional sections. Violations of the antitrust laws are alleged under Sections 1 and 2 of the Sherman Act and 7 and 8 of the Clayton Act, 15 U.S.C.A. §§ 1, 2, 18 and 19. The sole basis for jurisdiction in this Court is therefore exclusively by virtue of the Federal antitrust laws. Defendants presently move for dismissal of the complaint for failure to state a claim upon which relief can be granted, F.R.Civ.P. 12(b) (6), 28 U.S.C. and for summary judgment under F.R.C.P. 56 for lack of standing to sue on the basis of the established facts.

This litigation has a past history which is material to the determination of the motions presently before the Court. In 1957 plaintiff filed suit in this Court seeking relief similar to what he now seeks but this Court dismissed without prejudice that earlier action on February 24, 1958, for failure on the part of the plaintiff to comply with F.R.C.P. 23(b), in that plaintiff did not submit to the stockholders for their consideration the facts upon which this suit is based. Immediately thereafter plaintiff submitted to the management of M & T a resolution asking that the stockholders approve a suit by M & T against Canco and eight named directors and included a statement in support thereof. A proxy battle followed in which the management opposed the resolution, with the support of Canco, a substantial shareholder of M & T, while plaintiff, who also was a substantial shareholder, sought its approval. Of 799,012 shares entitled to vote, 766,276 were represented at the annual meeting. By a vote of 579,945 to 185,731, the Rogers proposal was defeated. Included in that vote were Canco's 178,261 shares, which were voted in opposition to the Rogers proposal, but not until after it was apparent that an independent majority of the shareholders had already cast their ballots to defeat the proposal. Eliminating both the Canco and individual director defendants' stock interests, and the Rogers interests, there was nevertheless more than a majority of all eligible voting stock which voted against the Rogers proposal.

Thereafter plaintiff reinstituted his antitrust derivative suit and, after an amendment of the complaint, defendants made the motions now before the Court. In the amended complaint plaintiff alleged intimidation of the stockholders when they voted against his proposal. Since the complaint was verified on information and belief, this Court ordered a preliminary hearing on the question of intimidation, because, if intimidation were in fact proven, the stockholder vote, of such importance otherwise, would have been a nullity. Plaintiff, by order of the Court, was directed to produce evidence in the form of depositions, in support of his allegation of intimidation. Plaintiff failed to submit clear evidence in that regard and has admitted

his inability to support such an allegation. This resulted in the exclusion of paragraph 29(j) of the amended complaint [the intimidation allegation] from consideration on these defendants' present motions.

M & T is a corporation organized under the laws of the State of New Jersey and among its activities is the purchase and detinning of tin plate scrap, the sale of such detinned steel scrap to steel manufacturers and the sale or use of the tin recovered in the detinning process. Canco is the principal supplier of tin plate scrap to M & T.

Plaintiff contends that this action is brought on behalf of M & T, to liberate M & T from the illegal control exerted over it by the various defendants. Plaintiff further alleges past and prospective injury to M & T from the actions of the defendants. In paragraphs 30(a) through 30(e) of his amended complaint plaintiff sets forth the alleged injury to M & T that has resulted from these actions. Such injury allegedly precludes M & T from actively competing in the open market for the purchase of tin plate scrap and also has caused the arbitrary fixing of prices by Canco, preventing M & T from seeking a more competitive price on the open market. Plaintiff clearly indicates that the injuries that M & T suffers, and for which he sues derivatively, and that the acts complained of which have produced these injuries, not only occurred in the past but have continued up until the filing of the complaint, and their harm to M & T through the violation of the antitrust laws will continue into the foreseeable future.

■ Defendants move for a dismissal under F.R.C.P. 12(b)(6) on the theory that a suit under the antitrust laws requires proof of injury to the plaintiff and that, since M & T is named as a defendant it is an impossibility for M & T to claim that it is injuring itself. Secondly, defendants contend that the shareholder vote not to bring suit against the defendants Canco and the eight directors is a bar to the derivative suit, in that the decision of the shareholders amounted to an expression of business judgment not to involve the corporation in protracted litigation.

As to defendants' first contention, the readily apparent answer is that the complaint does not allege that M & T is willfully injuring itself. In paragraph 8(j) of the amended complaint it is stated that the reason M & T is named as a defendant is that it is unable to express its independent will to join as a plaintiff, due to the control exerted over it by the other defendants. Thus, as in other derivative suits, M & T, for whose benefit the action is brought is named as a nominal defendant only, not injuring itself or anybody else.

■ Plaintiff alleges in his amended complaint injury to M & T and such allegations must be deemed to be true for purposes of this motion. Thus the requirement of injury or threatened injury to the beneficial plaintiff is satisfactorily set forth. In Gomberg v. Midvale Co., D.C.E.D.Pa.1955, 157 F.Supp. 132, the only injury complained of was possible liability of the corporation, for whose benefit the suit was brought, in a future action against it for antitrust violations. In his opinion Judge Ganey, at page 142, summed up the requisite allegation of injury necessary to maintain a suit under the Clayton Act:

"In sum the injury which the laws envision is the injury to the economy of the plaintiff, by virtue of restrictions of trade or something that proximately flows from it, in the competitive field in which it is engaged when the illegal act is committed."

That is exactly what plaintiff alleges here. To prove such injury may indeed be a formidable hurdle to negotiate, but that does not bar the plaintiff at this stage of the proceedings. See also Conference of Studio Unions v. Loew's Inc., 9 Cir., 1951, 193 F.2d 51, 54 and 55, certiorari denied 1952, 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687; Beegle v. Thomson, 7 Cir., 1943, 138 F.2d 875, 881.

Furthermore, nowhere does Rogers seek relief for himself as an individual stockholder. Thus no impediment presents itself in that regard.

■ Defendants raise the point that in reality this is an intracorporate dispute based upon an alleged breach of fiduciary duty owed by directors, officers and stockholders to the corporation, and as such is not properly cognizable by this Court, which has jurisdiction here solely under the antitrust laws. While it is true that certain allegations in this case reflect a theory of breach of fiduciary duty, the acts complained of are stated to be antitrust violations and it is these alleged violations for which relief is sought. It may very well be that plaintiff could have brought an action in a State court for breach of fiduciary duty, but that fact should not bar him here when he alleges antitrust law violations. Indeed, any derivative suit which involves antitrust violations almost necessarily must involve some breach of fiduciary duty or mismanagement by officers or directors, since they have guided the corporation into activities which violate the law, or at the very least, have acquiesced in such conduct.

The case of Meyer v. Kansas City Southern Railway Co., 2 Cir., 1936, 84 F. 2d 411, certiorari denied 1936, 299 U.S. 607, 57 S.Ct. 233, 81 L.Ed. 448 is cited by the defendants to support their contention in this regard. Meyer no longer appears to be controlling, even in the Second Circuit, in view of the recent case of Fanchon & Marco v. Paramount Pictures, 2 Cir., 1953, 202 F.2d 731, 36 A.L.R.2d 1336. At any rate, *Meyer* attempted to base jurisdiction on the then 28 U.S.C.A. § 41 [1] on the grounds that the relief sought depended on the construction of Federal laws. Jurisdiction was not based on the Clayton Act, as here. Thus the Court said that a breach of fiduciary duty issue could be dealt with quite apart from the fact that such breach involved the antitrust laws. The Court therefore held that no jurisdiction under

28 U.S.C.A. § 41 existed, since a determination of antitrust violations was not necessarily involved.

Furthermore, though it is true that in dictum the Court referred to Fleitmann v. Welsbach Street Lighting Co., 1916, 240 U.S. 27, 36 S.Ct. 233, 60 L.Ed. 505 and United Copper Securities Co. v. Amalgamated Copper Co., 1917, 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119 indicating that a derivative suit, being equitable in nature, would not lie for an antitrust treble damage suit, then on the law side, the joinder of law and equity under the F.R.C.P., particularly Rule 2, would appear to have erased this old procedural bar. *Fanchon,* supra; Ramsburg v. American Investment Co. of Illinois, 7 Cir., 1950, 231 F.2d 333; Schechtman v. Wolfson, 2 Cir., 1957, 244 F.2d 537; Kogan v. Schenley Industries, D.C.D.Del. 1956, 20 F.R.D. 4; and *Gomberg,* supra. Judge Clark, in particular in *Fanchon,* illustrates the changed situation resulting from the modern Federal procedural structure and signifies that the procedural difficulties envisioned by Justice Brandeis in *Copper* no longer burden the Federal courts.

As for Continental Securities Co. v. Michigan Central Railroad Co., 6 Cir., 1926, 16 F.2d 378; certiorari denied 1926, 274 U.S. 741, 47 S.Ct. 587, 71 L.Ed. 1320, that case involved a suit by a private stockholder seeking relief by way of forced dissolution of control by one defendant [New York Central] of the other defendant [Michigan Central], plaintiff being a minority stockholder of the latter railroad. It appears to have been a derivative action, but the Court, at page 379, talks in terms of a private suit by a stockholder seeking injunctive relief for itself by freeing Michigan Central from the "yoke" of the New York Central. However, the Court there, after discussing the above, felt that the reasons for injunctive relief had no merit, on the theory that the plaintiff became a stockholder in Michigan Central after the alleged illegal acts had been completed,

1. Now 28 U.S.C.A. § 1331.

distinctly not the case here. The Court also implied that the relief asked [dissolution] was beyond the reach of Section 16 of the Clayton Act, although admitting that an injunction against continued violation might be proper. Without discussing the merits of this reasoning, it would not appear applicable to the instant case. When and if the time arrives for this Court to determine the scope and nature of the equitable relief, then it will be necessary to ascertain what the appropriate relief should be. Certainly there can be no doubt that Section 16 of the Clayton Act affords a remedy by way of injunctive relief in some form.

■ As to defendants' second contention, i. e., the question of "business judgment", a more difficult situation is presented. Here we not only have conflicting views in various jurisdictions, but significant aspects of policy as to corporate law that are involved. Under Rule 23(b) F.R.C.P. the exhaustion of intracorporate remedies is required. This was accomplished. To say now that, having exhausted these remedies, plaintiff is barred, would be to make the requirement almost meaningless. There can be many reasons for requiring a stockholder vote. Perhaps the stockholders will be able to effect a satisfactory intracorporate settlement. Perhaps they can persuade the directors to bring the action. Perhaps they will take over the action themselves. Finally, they can, of course, as they did here, reject the idea entirely. Obviously going first to the stockholders has many practical advantages. However, in and of itself a negative disinterested shareholder vote should not be a bar to the continuation of the derivative suit under all circumstances. And this is especially so where the action is based solely on Federal antitrust law, which is here allegedly violated by the defendants. These laws express an important nationwide public policy. Obviously it is unlawful to violate them. It would seem equally obvious that it would be legally impossible to ratify their violation. Further, it would be equally unlawful to conspire and agree to violate

them in the future. Nor could such an agreement be lawfully ratified. In fact, the antitrust acts themselves provide for equitable intervention under such circumstances. Thus any attempt by corporate stockholders by vote or otherwise, to ratify such illegal acts in the past, or to conspire to that end in the future, would be a nullity, calling for the intervention of equity to prevent the effectuation of such conspiracy in the future, and entitling the corporation to damages for its injuries in the past.

So much for the effect of a stockholder vote to ratify the acts of third parties in violation of the antitrust laws which injure the corporation. Since the vote is a nullity, obviously it cannot bar a suit by the injured corporation, or a derivative suit by a minority stockholder, to obtain relief.

■ However, there may be a question whether or not such vote was actually a ratification of the violation of the antitrust laws, past, present and future. If it were not, then it might be lawful. For instance, if the vote stated specifically that the stockholders in such vote in nowise intended to ratify the past violation of the antitrust laws or to authorize such a violation in the future, but only expressed the judgment of the stockholders that it would not be the exercise of good business judgment to sue for the past damages, now that they were assured that no future violations would occur, under such circumstances the vote would not constitute a ratification of such antitrust violations. Such being the case, the vote would bar a derivative stockholder's suit such as the present. And such would seem to be the distinguishing feature between the authorities, some of which hold that a stockholder vote does bar such a derivative suit as that here, and others that it does not. That a stockholder vote does bar such a suit, see S. Solomont & Sons Trust v. New England Theatre Operators, 1950, 326 Mass. 99, 93 N.E.2d 241; *United Copper*, supra; Post v. Buck's Stove and Range Co., 8 Cir., 1912, 200 F. 918, 43 L.R.A.,N.S., 498. That it does not, see

Gottesman v. General Motors, 2 Cir., 1959, 268 F.2d 194; Mayer v. Adams, Del.1958, 141 A.2d 458; Siegman v. Electric Vehicle Co., E. & A. 1907, 72 N.J.Eq. 403, 65 A. 910; Continental Securities Co. v. Belmont, 1912, 206 N.Y. 7, 99 N.E. 138, 51 L.R.A.,N.S., 112.

Rule 23(b) had its origin in Equity Rule 94, 104 U.S. X, which was promulgated by the Supreme Court after the decision in Hawes v. City of Oakland, 1882, 104 U.S. 450, 26 L.Ed. 827. *Hawes* presented the Supreme Court with the further problem of a flood of collusive diversity litigation, thus establishing the requirement of the exhaustion of corporate remedies. Further, the language in *Hawes,* 104 U.S. at page 462, implies that, should the stockholder vote be negative, the plaintiff would be barred. This, defendants contend, gives to 23(b) substantive as well as procedural effect. However this may be, the substantive effect was not so broad as to amount to a complete bar. For, in *Hawes,* the act complained of by the plaintiff may have been ultra vires the corporation, but it was not a violation of positive law, as here, and the Court indicates broad categories of situations where a derivative suit would lie, despite such a stockholder vote.

Defendants say that the decision not to sue was an expression of business judgment and as such is a bar to this suit on the authority of *United Copper,* supra, *Solomont,* supra, and urge this Court to follow that Massachusetts rule. *Copper* did not involve a stockholder vote and so the statements in that regard were dicta. Furthermore, in *Copper* the defendants did not include directors of the injured corporation, nor was the corporate defendant a major stockholder of the injured corporation, nor was such injured corporation participating against its will in the alleged conspiracy, all of which are alleged in the present case as additional aggravating factors. Here also plaintiff alleges a continuing wrong injurious to M & T that is presumably still in existence, and very clearly continued up to the filing of the complaint.

In *Copper* it would appear that the antitrust violation was a past act against which only treble damages were sought.

*Solomont,* supra, involving a stockholder vote, and *Post,* supra, involving a director vote, also involved a past act, unlike the continuing situation here, and are distinguishable on that basis. In *Solomont* the act complained of was a violation of the antitrust laws but the Court there said the stockholder decision not to sue was separate and distinct from the illegal act itself, and considered that vote a bar to the plaintiff. This was probably because "There were detailed findings as to the reasons underlying the votes of the several stockholders * * * each did not consider it in the best interest of Netoco [plaintiff] to bring suit," *Solomont,* supra, 93 N.E.2d at page 245, i. e., voters did not ratify illegal acts, but, despite illegal acts, thought it unwise to sue, for economic reasons perhaps. However, this question of whether a vote not to sue is or is not a ratification of the act upon which the suit would be based is a much debated one. See 73 Harv.L. Rev. 746, at p. 762, and Kessler & Co. v. Ensley Co., C.C.Ala.1903, 123 F. 546; Siegman v. Electric Vehicle Co., supra, Mayer v. Adams, supra. In *Siegman* the opposite view from *Solomont* was adopted in that the New Jersey court there stated that a vote not to sue was in reality an attempt at ratification of the illegal act, which was therefore unlawful.

At this point it may be well to note that the difficult question of whether this Federal court, in a case based on Federal law, should adhere to New Jersey law on the issue of corporate ratification, quite obviously a matter of corporation law, is presented. Since this Court reaches a decision basically consistent with New Jersey law, as espoused in *Siegman,* that question need not be dealt with here.

Before returning to the question posed by the conflicting views of *Solomont* and *Siegman,* an additional contention of the defendants should be dealt with. They cite Escoett v. Aldecress Country Club, 1954, 16 N.J. 438, 109 A.2d 277 for the

proposition that a shareholder vote is not limited to the alternatives of ratification or disaffirmance. *Aldecress* does say that, even where the wrong was not ratifiable, there may well be situations requiring the presentation of the facts to the shareholders. In fact, as noted earlier in this opinion, there are various practical reasons why this is a sensible approach. Nevertheless, *Aldecress* does not say that once the shares vote not to sue plaintiff is barred.

In determining whether a stockholder vote not to sue is an exercise of business judgment or an attempt to ratify an allegedly illegal act, we must examine the facts alleged in that regard in the complaint under attack. For criticism of the Massachusetts rule, see Carroll v. New York, New Haven and Hartford Railroad, D.C.D.Mass.1956, 141 F.Supp. 456 and Pomerantz v. Clark, D.C.D.Mass.1951, 101 F.Supp. 341. Also see discussion of this troublesome problem in the Harvard Law Review article noted above. In that article the author suggests the existence of a rebuttable presumption that a vote not to sue amounts to ratification. The difficulty with this detailed factual approach is the impracticality of clearly determining just why the stockholders voted as they did. There may be as many reasons as there are stockholders. Add to this the unlikely situation that any particular shareholder would be willing to admit he voted as he did because he liked the idea of violating the antitrust laws, or that he disliked the minority shareholder who is bringing this suit. These are but sample illustrations of the problems such an approach would create.

At any rate, a careful consideration of the complaint herein leads to no other conclusion than that the vote of the shareholders was an attempt at ratification of the alleged wrong. This is so because the complaint alleges a continuation into the future of the violation of the antitrust acts complained of as having occurred in the past, and because of the election by this vote as new directors, of the very directors who carried on this conduct in the past. This shows the evident acquiescence of the voting stockholders in the carrying on of these same allegedly unlawful activities in the future. More specifically, the complaint, in section 26, alleges "a continuing combination, conspiracy and agreement to restrain and monopolize interstate trade and commerce." It says that this conspiracy included the acquisition by Canco of the M & T common stock, so that thereafter M & T would operate either as a wholly owned subsidiary of Canco or as one of its divisions. This had apparently not yet taken place when the complaint was filed. The complaint also alleges that the individual defendants would as M & T's directors and officers insure to Canco its *future entrenchment* as the principal supplier of M & T's tin plate scrap. It further alleges that Canco and the individual defendants would use M & T to fix the price of tin plate scrap in the several market areas in the United States. The complaint finally charges not only that Canco controlled the M & T directors, but that the above mentioned conspiracy was aimed to bring about in essence a merger of M & T into Canco, for the benefit of Canco and in contravention of the antitrust laws.

All these allegations of the complaint clearly indicate the illegal action of the defendants, including the M & T directors, in the past. Thus when the stockholders voted to reelect these same directors, they essentially voted, as the complaint alleges, to have these same illegal acts carried out in the future. Obviously this vote was not one as in *Solomont,* simply that it was unbusinesslike to sue for past damages and thus involve M & T in a long continued and exceptionally complicated litigation. It was a vote that the stockholders not only approved of the allegedly illegal acts of their own directors with Canco, but that the stockholders wanted these same methods to be continued in the future by these reelected director defendants.

Since the shareholder vote is equivalent to an attempted ratification of these alleged antitrust violations, and was not

purely an expression of business judgment, the vote will not serve as a bar to the bringing of the present suit. *Siegman*, supra; *Gottesman*, supra; Continental Securities Co. v. Belmont, supra. It would be unthinkable to allow the ratification of violations of Federal law to serve as a bar to a suit for redress of the injuries sustained thereby where Congress by specific enactments has provided for such redress as a matter of public policy.

At the oral argument defendants raised some additional points which should be disposed of. First, the case of Goldlawr, Inc. v. Shubert, et al., 3 Cir., 1960, 276 F.2d 614 is cited for the principle that the stockholders of a corporation cannot conspire with that corporation. There the stockholder owned 100% of the stock and managed the corporation. In essence he was the corporation. Here defendant Canco owns but appproximately 20% of the stock of M & T. Furthermore, the conspiracy complained of here was between individual directors of M & T and Canco, with M & T being brought into the picture against its will. Nor is this a case of a parent and a subsidiary involved in a conspiracy. See Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 1951, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219. *Goldlawr* has no application to the instant case.

Second, defendants contend that if ratification resulted from the continuance of the wrong, at least that portion of such conduct that occurred prior to the complaint and for which treble damages are sought, should be dismissed, since the vote not to sue was as to those past acts purely a matter of business judgment. This argument overlooks the fact that the wrongs complained of are not separable by periods of time, but are in the form of a continuing policy. The injurious acts prior to the filing of the complaint, continuing up to and presumably past such filing, are one and inseparable. It would be unrealistic to say that the shareholders voted on the one hand as purely a matter of business judgment not to sue for conduct up to the time of the vote, and on the other hand, and in the same breath, voted to ratify the continuance of that conduct in the future. It is hard to imagine that the shareholders were not ratifying at the same time identical acts that occurred five minutes before and five minutes after their vote. There was but one vote, not two.

It might be well to note that this case is not a "strike suit." Here the plaintiff is a substantial stockholder of M & T. Thus the usual forebodings as to such suits are not present.

Defendants' motion to dismiss, and for summary judgment, is denied. An order may be entered accordingly.