Allan MOLASKY ex rel. CLAYTON COR-
PORATION OF DELAWARE,
Plaintiff-Appellant,

v.

Aaron S. LAPIN, Marcus Lipsky, and Clayton
Corporation of Delaware, Defend-
ants-Respondents.

No. 32150.

St. Louis Court of Appeals.

Missouri.

Nov. 16, 1965.

Goldenhersh, Goldenhersh, Fredericks,
Newman & Lane, Samuel J. Goldenhersh,
St. Louis, for plaintiff-appellant.

Melvin L. Hertzman, St. Louis, for de-
fendants-respondents.

DOERNER, Commissioner.

This is a derivative action by a minority
stockholder to require the majority stock-

holders to account to the corporation for profits alleged to have been realized by them, and losses claimed to have been sustained by the company, resulting from the sale of certain stock to the corporation. Plaintiff procured service of process on the individual defendants by an attachment of their stock in an unrelated corporation. Defendant Lapin appeared specially and moved to dissolve the attachment. The trial court sustained the motion and quashed the attachment and garnishment issued pursuant thereto against defendant Lapin. Thereafter the court denied plaintiff's motion for default and inquiry against defendant Lipsky for lack of jurisdiction over him, dissolved the attachment and garnishment as to him, and ruled that the order be treated as a final order in the case. Plaintiff appealed to the Supreme Court, which held that it lacked appellate jurisdiction and transferred the cause to this court, 384 S.W.2d 613.

In brief, plaintiff alleged in his petition that Lapin and Lipsky, owners of a majority of the outstanding common voting stock of Clayton Corporation of Delaware (joined as a nominal party defendant under Civil Rule 52.04(a), V.A.M.R.), conceived the plan, scheme and conspiracy of foisting on Clayton Corporation the stock which they and their associates owned in another corporation, Development Research, Inc., for $1,250,000 plus additional considerations; that Lapin and Lipsky contemplated that they would use their domination and control of the board of directors of Clayton Corporation to effect approval of the transaction and pay over to defendants and their associates, "a sum substantially in excess of the value of the shares of stock of said Development Research, Inc. owned by said defendants and their associates"; that the payment of the consideration was not the result of arm's length bargaining but was dictated by Lapin and Lipsky to serve their personal interests and that of their associates at the expense of Clayton Corporation; that the fair and reasonable value of the stock of Development Re-

search, Inc., "was substantially less than the sum paid for same and was therefore unfair to Clayton Corporation of Delaware and unduly favorable to the stockholders of Development Research, Inc. and more particularly, the defendants and their associates"; that it constituted a fraud and a gift and waste of the assets of Clayton Corporation; that the individual defendants acted recklessly, negligently and carelessly and are liable to account for all losses sustained by Clayton Corporation as a result thereof; and that "The exact amount of said losses is unknown to plaintiff and can be ascertained only upon an accounting in this action." It was further alleged that plaintiff was a minority stockholder of Clayton Corporation at the time of the transactions complained of and continues to be; that the members of the board of directors of the corporation were nominated and caused to be elected by the individual defendants, and that all of the directors were dominated and controlled by the individual defendants to such an extent that a demand by the plaintiff that the board bring this action would have been futile; and that plaintiff brings the action for himself and on behalf of all other shareholders similarly situated. The prayer was that the individual defendants be required to account to Clayton Corporation for all profits and gains obtained by them and for all losses and damages sustained by the corporation by reason of the transactions, " * * * not in excess of $1,250,-000"; that plaintiff be awarded his reasonable costs and disbursements, including reasonable attorneys' and accountants' fees; and "That plaintiff have such other, further and different relief as the Court may deem just and proper in the premises."

The trial court dissolved the attachments against the individual defendants, " * * * for the reason that a derivative shareholder's suit can lie only in equity, and attachment is not available in an equity action." Plaintiff does not dispute the court's ruling that in an equity suit service may not be obtained upon a nonresident

defendant by an attachment. Civil Rule 85.01, V.A.M.R.; State ex rel. Auchincloss, Parker & Redpath, Inc. v. Harris, 349 Mo. 190, 159 S.W.2d 799. And in his brief he concedes that, "Prior to 1943, it was mandatory that the jurisdiction in a case similar to that in the case at bar, be in equity. * * *" In view of this concession that what has come to be known as a stockholder's derivative action, at least until 1943, could be maintained only in equity we need not elaborate on the origin and development in equity of such a suit however tempting that subject may be.[1] The significance of plaintiff's reference to the year 1943 is to be found in the contention in his brief that, "Section 507.070(2), R.S.Mo.1959, adopted by the Missouri Legislature in 1943, converted derivative shareholders' actions and class actions into actions at law. * * *" Basing his argument on this premise, plaintiff asserts that his action was one at law, and that the court therefore erred in dismissing it on the grounds that a shareholder's derivative action would lie only in equity.

Section 507.070(2), RSMo 1959, V.A. M.S., was enacted by the General Assembly in 1943 as one of the provisions of our (then) new Code of Civil Procedure. Laws 1943, p. 353, Sec. 19(b). It has since been superseded by Civil Rule 52.08(b), V.A. M.R., which as promulgated by our Supreme Court reads:

"In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it, the petition shall aver that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law. The petition shall also set forth with particularity

the efforts of the plaintiff to secure from the managing directors or trustees, and, if necessary, from the shareholders, such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort."

■ The origin of the Rule, the reasons for its adoption, and its historical development effectively refute plaintiff's argument that a shareholder's derivative suit was thereby converted into an action at law. The inception of the Rule is to be found in Hawes v. City of Oakland, 14 Otto (104 U.S.) 450, 26 L.Ed. 827, decided in 1881. In an earlier case, Dodge v. Woolsey, 18 How. (59 U.S.) 331, 15 L.Ed. 401, decided in 1855, the Supreme Court had upheld the equity jurisdiction of the Federal court in an action by a nonresident stockholder against an Ohio corporation and Ohio taxing officials to enjoin the payment and collection of a tax claimed to be unconstitutional. As pointed out by Moore in his Federal Practice, 2nd Ed., Vol. 3, Sec. 23.15, the Dodge case was followed by a number of cases in which it appeared that collusive attempts were made to foist jurisdiction on the Federal courts through the device of having a nonresident stockholder bring the action against the corporation and the third party in order to obtain the requisite diversity of citizenship. As a means of negating such collusion, the court, after enumerating various examples of a shareholder's bona fide action, stated (104 U.S. 460, 461):

"But, in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has

---

1. Those interested may consult Prunty, "The Shareholder's Derivative Suit: Notes on Its Derivation," 32 N.Y.U. Law Rev. 980; Pomeroy's Equity Juris-

diction, 5th Ed., Vol. 4, Sec. 1089; Moore's Federal Practice, 2nd Ed., Vol. 3, Sec. 23.15.

exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it.

"The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders when that is necessary, and the cause of failure in these efforts should be stated with particularity, and an allegation that complainant was a shareholder at the time of the transactions of which he complains, or that his shares have devolved on him since by operation of law, and that the suit is not a collusive one to confer on a court of the United States jurisdiction in a case of which it could otherwise have no cognizance, should be in the bill, which should be verified by affidavit."

At the same term the Supreme Court implemented its decision in Hawes by adopting former Equity Rule 94, which was subsequently slightly modified in 1912 by the promulgation of Equity Rule 27. The present Rule 23(b) of the Federal Rules of Civil Procedure is substantially a copy of Equity Rule 27. Notes of Advisory Committee on Rules, 28 U.S.C.A., p. 148. And by comparison it is obvious that Section 507.070(2), V.A.M.S., and our super-

seding Civil Rule 52.08(b), V.A.M.R., were in turn derived from Federal Rule 23(b).

If Civil Rule 52.08(b) converted what has always been a suit in equity[2] into an action at law, as plaintiff contends, then it must of necessity deal with a matter of substantive law rather than a matter of procedure. The inception and historical antecedent of the Rule which we have mentioned militate against such a contention. The very purpose of its origin was that of placing limitations on an existing suit in equity, not the creation of a new action at law. Nor is there any language in the Rule itself which lends support to plaintiff's argument. Civil Rule 52.08(b), as does Federal Rule 23(b), tacitly recognizes the ancient and well-established right of a shareholder to seek relief in equity for the corporation for an injury committed or threatened against it, when he cannot obtain relief from the directors or fellow-stockholders. All that Section 507.070(2) did, or our Rule does, is to restate certain elements which our appellate courts had long held were requisite to the maintenance in equity of a shareholder's derivative suit. See Brooker v. William H. Thompson Trust Co., 254 Mo. 125, 162 S.W. 187; Barnett v. Ground, 304 Mo. 593, 263 S.W. 836; Punch v. Hipolite Co., 340 Mo. 53, 100 S.W.2d 878; Kirrane v. Boone, 334 Mo. 558, 66 S.W.2d 861; Caldwell v. Eubanks, 326 Mo. 185, 30 S.W.2d 976, 72 A.L.R. 621.

■ The very adoption and promulgation of Civil Rule 52.08(b) by our Supreme Court is a further refutation of plaintiff's contention that an action at law was created by the superseded statute. That Rule was established pursuant to the rule-making power conferred on the Supreme Court by Art. V, Sec. 5, Const.1945, V.A.M.S. The authority therein granted to the Court is

2. Merrill v. Davis, 359 Mo. 1191, 225 S.W. 2d 763; Punch v. Hipolite Co., 340 Mo. 53, 100 S.W.2d 878; Saigh ex rel. Anheuser-Busch v. Busch, 396 S.W.2d 9, St. Louis Court of Appeals, Sept. 21, 1965; Fletcher Cyclopedia Corporations, Perm. Ed., Vol. 13, Sec. 5944, p. 418; Cavitch, Business Organizations, Vol. 6, Sec. 119.01.

to, " * * * establish rules of practice and procedure for all courts * * * " but the limitation placed upon the power is that " * * * The rules shall not change substantive rights * * *." In consequence of that limitation it would seem that any rule which attempted to change or create a substantive right would come within the purview of the constitutional prohibition. See State v. Virgilito, Mo., 377 S.W.2d 361; State v. Pottinger, 365 Mo. 794, 287 S.W.2d 782; In re Moore, Mo. App., 282 S.W.2d 856. The question of whether the requirements of a New Jersey rule, similar to our Civil Rule 52.08(b), were procedural in nature, and therefore within its constitutional rule-making power, or dealt with substantive law, was before the Supreme Court of that state in Escoett v. Aldecress Country Club, 16 N.J. 438, 109 A.2d 277, 283, which held: " * * * The requirement is procedural in nature and was properly adopted within the constitutional authority of the court. * * *"

■ Plaintiff's final contention appears to be that all distinctions between actions at law and suits in equity have been abolished by Civil Rule 42.01, which reads: "There shall be one form of action to be known as 'civil action'." That rule and the statute which it superseded, Section 506.040, RSMo 1959, V.A.M.S., may have abolished technical niceties as to the forms of action but it did not affect the demarcation between equity and law cases in matters of substance and remedy. Krummenacher v. Western Auto Supply Co., 358 Mo. 757, 217 S.W.2d 473; Kesinger v. Burtrum, Mo. App., 295 S.W.2d 605.

■ Furthermore, while plaintiff asserted in oral argument that it was his *intention* to draft a petition for an action at law, the language employed as well as the composition of his complaint leads us to the conclusion that the result actually achieved was a bill in equity. Particularly persuasive in that connection is the allegation as to the necessity of " * * * an accounting in this action" in order to ascertain the exact amount of the loss resulting to Clayton Corporation from the sale to it of the stock in question, as well as the closing sentence of the prayer, in which it is asked, "That plaintiff have such other, further and different relief as the Court may deem just and proper in the premises."

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.