**Fern B. JORGENSEN, Respondent,**

v.

**CITY OF KANSAS CITY, Missouri and Christopher E. Gussman, Appellants.**

v.

**Kit C. ROQUE, Jr., Third Party Defendant Ad Litem, Respondent.**

**No. WD 37771.**

Missouri Court of Appeals, Western District.

Feb. 24, 1987.

----

Richard N. Ward, City Atty., Jeffrey L. Hess, Asst. City Atty., Kansas City, for Kansas City, Mo.

Marilyn S. Gussman, Kansas City, for Gussman.

G. Spencer Miller, Miller & Dougherty, Kansas City, for Fern Jorgensen.

Richard F. Modin, Kansas City, for Kit C. Roque, Jr., Defendant ad litem for Geo. Jorgensen.

Before SHANGLER, P.J., and MANFORD and BERREY, JJ.

SHANGLER, Presiding Judge.

The litigation arises out of a four vehicle collision at the intersection of 39th Street and Broadway in Kansas City, Missouri, on the afternoon of October 17, 1983. Broadway runs north and south, and 39th Street runs east and west. The thoroughfares were governed by speed limits of 35 and 30 miles per hour, respectively. A municipal pumper fire truck, owned by Kansas City and driven by apparatus operator Gussman entered the intersection from the south on Broadway and came into collision with a Cadillac driven by Jorgensen on 39th Street from the east. The collision also involved a Plymouth and an Oldsmobile, both stopped in the southbound lanes of Broadway, north of the intersection. The pumper fire truck was en route in response to an emergency with sirens and red flashing lights in operation. There was some dispute as to the condition of the traffic lights as the fire vehicle entered the intersection as well as whether the Cadillac stopped, slowed or swerved to avoid collision. Jorgensen, then 82 years of age, was extricated from the Cadillac, taken to the hospital for treatment, and died there one week later.

The widow Jorgensen sued for the wrongful death of her husband and joined Kansas City and Gussman as defendants. They asserted the comparative fault of the decedent as a defense. The defendant Kansas City then moved the court under § 537.021.1(2) to appoint a third party defendant ad litem for the deceased Jorgensen to allow prosecution of its claim for damage to the pumper fire truck in the collision. The motion was granted and Kit C. Roque, Esquire was appointed defendant ad litem for the deceased. Thereupon, the City of Kansas City brought its third-party petition for property damage against the defendant ad litem, and the defendant Gussman, as third-party plaintiff brought a petition against the defendant ad litem for damages for personal injury.

The cause of action of widow Jorgensen was submitted against the defendants on the theory that Gussman drove at an excessive speed. The third party claim of each, Kansas City and Gussman, against the de-

fendant ad litem Roque was submitted on the theories that the decedent Jorgensen violated the traffic signal and failed to yield the right-of-way. The verdict director of each claim—the widow Jorgensen, Kansas City and Gussman—instructed that: *"Your verdict must be for* [plaintiff Jorgensen] [third party plaintiff Kansas City] [third party plaintiff Gussman] *and you must assess a percentage of fault to* [Kansas City and Gussman] [decedent Jorgensen] *if you believe...."* [emphasis added] The damages instruction of widow Jorgensen included a direction to return an award of $5,253 for property damage, should the jury find in favor of her claim for wrongful death. The damages instruction of Kansas City directed an award of $6,825 for property damage, should the jury find in favor of that third party plaintiff.

Verdict A was the form submitted to the jury for the return of the Jorgensen verdict; Verdict B for the return of the Kansas City verdict; and Verdict C for the return of the Gussman verdict. The forms were inscribed by the jurors, and returned, and accepted by the court. Each of the verdicts was signed by nine jurors—the same nine jurors. The essential Verdict A form, as submitted with directions and as returned with insertions by the jury, read:

VERDICT A

NOTE: Complete this form by writing in the name required by your verdict.

On the claim of Fern Jorgensen for the injuries to and death of George Jorgensen, deceased, and for property damage, we the undersigned jurors, find in favor of:

[Insertion] Defendants City of
Kansas City, Missouri, and
Christopher Gussman

_____

(Plaintiff Fern Jorgensen)  or  (Defendants City of Kansas City, Missouri and Christopher Gussman)

NOTE: Complete the following paragraphs only if the above finding is in favor of Plaintiff Fern Jorgensen.

We, the undersigned jurors, assess the damages of plaintiff Fern Jorgensen as follows:

For the injuries to and death of George Jorgensen, deceased $_____ (stating the amount or, if none, write the word, "none").

For property damage $_____ (stating the amount or, if none, write the word, "none").

NOTE: Complete by writing in the percentage of fault you assess to each of those named below. If you believe any of those named below is not at fault, write in "zero" for the percentage. The total of the percentages you assess must be 100%. [emphasis added]

We, the undersigned jurors, assess the percentages of fault as follows:

George Jorgensen                                    90%  [insertion]
City of Kansas City, Missouri and
Christopher Gussman                                 10%  [insertion]
                                                   100%

_____

The signatures of the same nine jurors subscribed the verdict.

The counterpart forms Verdict B and Verdict C were returned fully completed. Verdict B found in favor of the third party plaintiff Kansas City against defendant ad litem Roque and awarded property damages of $6,825, as otherwise directed by instruction. Verdict C found in favor of third party plaintiff Gussman against the defendant ad litem Roque and awarded personal injury damages of $5,000. Verdict B and Verdict C, each, assessed 10% fault to the third party plaintiff—Kansas City and Gussman, respectively—and 90% fault to Jorgensen. Verdict B and Verdict C, each,

was subscribed by the same nine jurors who had joined in Verdict A.

The verdicts were received by the court without objection and judgment was entered on the verdicts. Jorgensen moved for a new trial on all issues or, in the alternative, for new trial on damages only and assigned as reason—among the others—that the return of Verdict A was inconsistent in that the jury assessed 10% fault to defendants Kansas City and Gussman on the claim submitted by widow Jorgensen, but returned no damages, but instead the jury found in favor of the defendants. The written motion cited *Scott v. Davis*, 684 S.W.2d 872 (Mo.App.1984)—an opinion of this court—in support. The defendant ad litem moved separately for judgment notwithstanding the verdict, or alternatively, for a new trial. A reason assigned was the verdicts were inconsistent and confused, since the jury found for Kansas City and Gussman on the wrongful death claim, yet assessed percentages at 90% and 10% between Jorgensen and Kansas City and Gussman on the third party plaintiff claims.

The trial court sustained the Jorgensen motion for new trial, denied the defendant ad litem motion for judgment notwithstanding the verdict, but sustained the alternative motion for new trial. The court gave as reason that the verdicts were inconsistent, and cited *Scott v. Davis*, 684 S.W.2d 872 (Mo.App.1984).

## THE NEW TRIAL ORDER ON THE JORGENSEN CLAIM

The defendants—third party plaintiffs Kansas City and Gussman—argue on appeal that the court erred in the grant of a new trial to widow Jorgensen because (1) the verdict was received without objection, and (2) in any event was not inconsistent, in that, notwithstanding the assessment of 10% fault to the defendants Kansas City and Gussman, the return of no damages to widow Jorgensen was a determination that whatever the fault of the defendants, the fault assessed was not the proximate cause of the death or property loss.

We respond inversely to this bifurcated point.

It is the characteristic of our scheme of comparative fault that an act or omission "in any measure negligent" constitutes fault and subjects the actor to liability. Any contributory fault of the claimant diminishes, *pro tanto*, the amount awarded in compensation, but does not bar recovery. Comparative Fault Act § 1(a) & (b) [Appendix A, *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983)]. The assessment to the defendants Kansas City and Gussman of 10% fault on the Jorgensen claim, therefore, determined that the defendants breached their duty of care to the driver Jorgensen. The plaintiff widow Jorgensen was entitled to a verdict, however, only if the jury found the defendants negligent *and* that the widow Jorgensen was damaged *and* that the damages were the proximate result of that fault. [Instruction No. 9] If the evidence allowed the issue, therefore, that the Jorgensen death or property loss was not proximately caused by the fault found against Kansas City and Gussman, there would be no necessary inconsistency in a verdict which allocated fault to the defendants, but returned no damages on the claim of the widow Jorgensen, and rather found for the defendants on the cause of action.

■ The evidence, however, does not raise a jury issue of proximate cause of damages, so that Verdict A, which assessed some fault to the defendants Kansas City and Gussman, but returned no damages to the plaintiff widow Jorgensen and found in favor of the defendants on the cause of action, was internally inconsistent and ambiguous. The collision crumpled the left front side of the Cadillac, the area occupied by the deceased driver, and was so severely mangled that Jorgensen had to be extricated by other firemen at the scene. There was no dispute that damage was done to the Cadillac from the collision. The court instructed the jury [presumably on the agreement of the litigants] that if the jury found for the widow Jorgensen, then, "on her claim for property damage, you must award plaintiff Five Thousand Two Hun-

dred Fifty-Three Dollars and no/100 ($5,253.00)." The proximate cause between the collision by the fault of the defendants and the property damage, therefore, was conclusively proven, and the neglect of Verdict A to return damages for at least property loss rendered the verdict internally inconsistent. There was, moreover, no dispute with the medical evidence that the perforation of the viscus which brought on the death a week later was caused by the collision, or that the condition required hospital and medical care. The cost of the funeral was $4093.59, and the cost of the treatment was some additional $35,000.00. The proximate cause between the fault of the defendants and damages from the injuries and death of the driver Jorgensen was also conclusively shown. There was no dispute as to the proof of the medical, hospital and funeral expenses, and whereas, even without contest, it was for the jury to believe or disbelieve the true damages, it would have been against the weight of the evidence for the jury to have refused *any* damages. Verdict A was inconsistent as tendered by the jury and received by the court.

■ The defendants Kansas City and Gussman argue that the grant of new trial to the plaintiff Jorgensen was error never-theless because her failure to present to the court, before the jury was discharged, the contention that Verdict A was inconsistent, waived that irregularity. They cite *Douglass v. Safire*, 712 S.W.2d 373 (Mo. banc 1986), lately decided. The plaintiff Jorgensen accedes to that sense of *Douglass*, but argues that at the time the case was tried, a contrary rule appertained—the rule in *Scott v. Davis*, 684 S.W.2d 872 (Mo.App.1984)—and that neither the trial court nor trial counsel may fairly be convicted of lapse for faithful adherence to governing authority.[1] Indeed, *Douglass* [at 374[1]] expressly overrules *Davis* to reformulate the new rule of waiver:

> We now hold that a claim that a verdict is inconsistent to the point of being self-destructive must be presented to the trial court before the jury is discharged. Otherwise the claim of inconsistency will be held to have been waived. The reason is that, if the point is raised as soon as the verdict is returned, any error is capable of correction by ordering the jury to return for further deliberation. Our holding is in accord with the usual rule that the trial court must be given the opportunity to correct error while correction is still possible.

1. *Douglass* was decided by the Supreme Court en banc on June 17, 1986, some eight months *after* the trial of the case on review. *Scott* was decided by this court on December 4, 1984, about a year *before* the trial of the case on review.

In *Scott* the court granted the plaintiff Scott a new trial on the ground in the motion for new trial that the verdict was inconsistent or self-contradictory. It does not appear that the plaintiff Scott had objected to the verdict on that ground before it was received and the jury was discharged. Counsel for plaintiff Jorgensen here was counsel for defendant Davis there. He argues that he relied on the procedure employed in *Scott*—to grant review, as preserved error, of the ground in the motion for new trial that the verdict was contradictory, inconsistent and self-destructive, notwithstanding the movant presented no objection to the verdict before the discharge of the jury. To allow the waiver rule announced in *Douglass* thereafter retrospective effect to Jorgensen, counsel argues, is to deal hardship and injustice to the interests of Jorgensen who relied on *Scott* as governing authority.

We note also that this case was submitted under instructions and forms of verdict sanc-tioned, but not mandated by rule. MAI 37.03 *Comparative Fault—Damages* promulgated by the Supreme Court on January 24, 1986 for effect on September 1, 1986, all but dispels the possibility of the lapse the jury committed as to Verdict A. That model submission instructs:

> If you assess a percentage of fault to [any] defendant, then, *disregarding any fault on the part of the plaintiff, you must determine the total amount of plaintiff's damages* to be such sum as will fairly and justly compensate plaintiff for any damages you believe he sustained [and is reasonably certain to sustain in the future] as a direct result of the occurrence mentioned in the evidence. *You must state such total amount of plaintiff's damages in your verdict.*
>
> In determining the total amount of plaintiff's damages you must not reduce such damages by any percentage of fault you may assess to plaintiff. The court will compute plaintiff's recovery by reducing the amount you find as plaintiff's total damages by any percentage of fault you assess to plaintiff. [emphasis added]

Safire cites cases in which it is apparently held that error may be predicated on an inconsistent verdict even though the appealing party made no request that the jury be returned. [*Scott v. Davis, 684 S.W.2d 872 (Mo.App.1984); Stroud v. Govreau,* 495 S.W.2d 682 (Mo.App.1973)] He would place the entire burden on the trial court. We do not agree. No square decision of ours is cited in support of the proposition advanced. The other cases, if they do support Safire's claim, should no longer be followed. [emphasis added]

A verdict which assesses fault against the defendants on the claim of the plaintiff, but finds for the defendants is "inconsistent to the point of being self-destructive" within the principle of *Douglass*—where there was damage to the plaintiff and the damage was the proximate result of the fault. *Id.* Verdict A, therefore, falls under the governance of *Douglass*—and the irregularity in the verdict was waived by the neglect of the plaintiff to present the contention to the trial court before the jury was discharged—unless other principle intervenes to meliorate the application of the rule in *Douglass* to this case tried before its promulgation.

*Douglass* announces a new rule of law, and in the promulgation overrules [at 374[1]] *Scott v. Davis, Stroud v. Gouvreau* and declares that "[t]he other cases [which hold that a claim of inconsistent verdict is not waived by failure to present it to the court before the jury is discharged] should no longer be followed." The rationale in *Douglass* is that an inconsistent verdict is amenable to correction by further deliberation of the jury, and hence "the trial court must be given the opportunity to correct error while correction is still possible." A corollary of the *Douglass* rationale is that a judgment rendered on a verdict "inconsistent to the point of being self-destructive" has efficacy. *Id.* at 374[1]. It is for that reason that a litigant may not "place the entire burden on the trial court" to protect its interest in a veritable verdict. The *ante-Douglass* rule of decision, rendered by Supreme Court Division in *Thorne v. Thorne,* 350 S.W.2d 754 (Mo.

1961), was otherwise. *Thorne* was a suit for damages. The verdict form required the jury to find the issues for either the plaintiff or defendant, and if for the plaintiff, then to assess separate amounts for personal injury and for property damage. The jury instead returned a paper with the inscriptions: "Personal injuries $31,750.00. Damages $1000.00," but no finding for one party against the other. The court construed the return as a verdict for the plaintiff and against the defendant, and entered judgment accordingly. On review, the Supreme Court in *Thorne* acknowledged [at 758] that " [t]he only proper and safe way to correct such an ambiguity in the verdict' " was to " 'have the correction made in the verdict before it is received and recorded.' " It was, however, "*'for the trial court at the time of its rendition to call the attention of the jury to the defect.'* " *Id.* [emphasis added] That was because, according to that *ante-Douglass* rationale, a verdict of such ambiguity and inconsistency was not sufficient to sustain a judgment, and if rendered into a judgment was void and of no effect. *Id.* at 757. The neglect of counsel to protest the insufficient and inconsistent verdict before the discharge of the jury [under the *ante-Douglass* rationale], therefore, could not waive those irregularities because counsel might not "by inaction, create a verdict where none exists." *Id.* at 759.

*Douglass* holds to the contrary: in the absence of objection before the discharge of the jury, an inconsistent and self-destructive verdict will sustain a judgment. Accordingly, *Douglass* relegates to the litigant, and not to the court, the obligation to protect its interest in the verdict by timely objection. In a word, *Douglass* overrules not only the opinions named—*Scott* and *Stroud*—but also the opinions unnamed— *Thorne* issued in Supreme Court division, *Boone v. Richardson,* 388 S.W.2d 68 (Mo. App.1965) and those others of that ilk decided under the authority of *Thorne.* The effect of *Douglass* is to introduce a new prescription for the preservation of trial error: whereas hitherto, a self-contradictory verdict was not a sufficient basis

for judgment, hence an objection on that ground to such a verdict for the first time on a motion for new trial saved the error for redress both on the motion and on review; since *Douglass,* that error is preserved only by objection to the verdict before the discharge of the jury.

*Douglass* not only sponsors a new rule of procedure, but also marks it for prospective effect. The Supreme Court has authority to declare that a decision which overrules a prior decision shall operate retrospectively or prospectively. *State v. Walker,* 616 S.W.2d 48 (Mo. banc 1981). In the absence of such a declaration, that determination is governed by whether the new rule is procedural or substantive. "If the new rule is procedural, it is given prospective application only ... If ... substantive, it is given both retrospective and prospective application." *Id.* at 49. Procedure is " 'the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.' " *Hanna v. Plumer,* 380 U.S. 460, 464, 85 S.Ct. 1136, 1140, 14 L.Ed.2d 8 (1965). A rule of procedure does not function to "change or create a substantive right" [*Molasky v. Lapin,* 396 S.W.2d 761, 765 (Mo.App.1965)], but "to make the process of litigation a fair and efficient mechanism for the resolution of disputes [as to the right involved]." Ely, *The Irrepressible Myth of Erie,* 87 Harv.L.Rev. 693, 727 (1974). So, in *Douglass,* the court determined that the antecedent procedure which "place[d] the entire burden on the trial court" to notice and correct an inconsistent verdict was neither efficient nor fair. 712 S.W.2d at .374[1]. The court adopted instead a new procedure for the preservation of error of an inconsistent verdict returned by a jury in the resolution of a disputed cause of action so as to comport "with the usual rule that the trial court must be given opportunity to correct error while correction is still possible"—that is, by objection to the verdict before the discharge of the jury. *Id.* at 374[1]. That is to say, *Douglass* adopts a new rule of procedural law, and thus is prospective in application. *Sumners v. Sumners,* 701 S.W.2d 720, 723 (Mo. banc 1985). The directive in *Douglass* that contrary cases "should no longer be followed" [712 S.W.2d at 374[1]], moreover, gives emphasis that the rule announced applies only to cases tried *after* that opinion was adopted. *State v. Shafer,* 609 S.W.2d 153, 157[2–4] (Mo. banc 1980).

■ The objection by Jorgensen presented on the motion for new trial that the verdict of the jury was inconsistent sufficed to present that contention of error as to a case tried before the adoption of *Douglass* by the Supreme Court en banc on June 17, 1986. The grant of a new trial on that ground of error preserved by the widow Jorgensen was valid, and is affirmed. Our order of remand on affirmance as to widow Jorgensen, however, is not as to all issues, as decreed by the trial court, but as to damages only. The incongruities in the Jorgensen verdict were these: that, although the jury assessed a percentage of fault to the defendants Gussman and Kansas City on the claim of widow Jorgensen, and although damage to the widow proximately caused by that fault was conclusively proven, the jury verdict found in favor of the defendants Gussman and Kansas City, and returned no damages. The breach of duty found by the jury and the conclusive evidence that such negligence was the proximate cause of damage, entitles the widow Jorgensen—as a matter of law—to *some* money award. The damages issue will be submitted by a modified MAI 37.03, as effective on September 1, 1986. The trial court will compute the recovery to widow Jorgensen by the reduction of the amount returned by the jury by the 90% of fault assessed to the deceased driver Jorgensen.

■ Nor does the internal inconsistency in the widow Jorgensen verdict attain or otherwise impinge upon the separate verdicts returned in favor of Gussman and Kansas City on their claims for damage from the fault of deceased driver Jorgensen. The verdicts—each of which assessed 90% fault to Jorgensen and 10% fault to Gussman/Kansas City—accomplished that single apportionment of fault MAI 37.07 directs where there are multiple parties.

*See Douglass v. Safire,* 712 S.W.2d at 375[2]. In our system of pure comparative fault, *"any* party whose negligence was not the sole cause of his own injury may recover against any other person whose negligence played a part in causing the injury." [emphasis added] 2 Bender's Comparative Negligence § 14.10 (1986). An assessment of fault to a party, therefore, not only operates to diminish *pro tanto* the amount awarded to that party as compensation, but also as the basis of liability to another party. Comparative Fault Act § 1(a) & (b) [Appendix A, *Gustafson v. Benda,* 661 S.W.2d at 18].

Verdict B, which found for Kansas City, awarded property damage, and assessed 90% fault to driver Jorgensen and 10% fault to Gussman/Kansas City was responsive to its submissions that Jorgensen violated the traffic signal or failed to yield the right-of-way, and so was negligent, and that the negligence proximately caused the property damage. Verdict C, which found for Gussman, awarded personal injury damage, and assessed 90% fault to driver Jorgensen and 10% fault to Gussman/Kansas City, was responsive to his submissions that Jorgensen drove at an excessive speed, and so was negligent, and that the negligence proximately caused the personal injury. Thus, Verdict B and Verdict C each rendered full and unambiguous decision as to the matters committed to the jury for deliberation and determination. Neither was inconsistent or self-immolative, or affected by these incongruities in Verdict A nor, as our opinion decides, was the integrity of either Verdict B or Verdict C impaired by any other error in their adjudication. In the interest of fairness, adjudicative economy and efficiency, therefore, they stand as judgments. The order of the trial court for a new trial to the defendant ad litem Roque on the ground that Verdict B and Verdict C were inconsistent is reversed.

## THE VALIDITY OF THE NEW TRIAL ORDER IN FAVOR OF THE DEFENDANT AD LITEM ON GROUNDS NOT RULED

The court sustained the motion for new trial of defendant ad litem Roque on the stated ground that "the jury verdicts were inconsistent." We overrule that basis for decree. The defendant ad litem contends nevertheless that the other grounds of the motion for new trial are valid and the adjudication of a new trial as to the Kansas City and Gussman third party claims should stand.

### Exclusion from Evidence of the Fire Department Regulation

■ The defendant ad litem asserted in the motion for new trial that the court erred in the exclusion from evidence of a Kansas City Fire Department regulation offered by plaintiff widow Jorgensen which required emergency vehicles of the chassis type of the pumper fire truck to reduce speed to ten miles per hour when operated contrary to the traffic signal or stop sign. That regulation, the defendant ad litem asserted to the court, was the administrative counterpart of ordinance § 58.180. Ordinance § 58.180 was enacted in year 1960, and was repealed altogether in year 1972 by ordinance § 34.31. Section 34.31 supplanted the ten-mile-per-hour component of the 1960 ordinance and, in lieu, authorized the driver of an emergency vehicle in response to an emergency call to: "(b) 2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation." That was the ordinance in effect on October 17, 1983, the date of the casualty in litigation. There is no contention that § 58.180, *as an ordinance,* was in effect then, or had not been repealed.

It was the deposition testimony of Don Stein, Custodian of Records with the Fire Department—who was summoned "to testify concerning the rules and regulations of the Fire Department in effect on October 17, 1983, and to produce [certain documents]"—that a Manual of Instruction was compiled and issued by the department to train and to inform firefighters on a range of relevant subjects. The Manual also published the "traffic regulations as applied to authorized emergency vehicles" as contained in the Traffic Code, and these contents were revised from time to time. The 1981 Manual was in effect on October

7, 1983, the date of the casualty in litigation. The full text of ordinance § 34.31 [enacted in 1972] was rescripted—expressly as "provisions of the Traffic Code"—in the 1981 Manual as "Traffic Regulations As Applied to Authorized Emergency Vehicles." The full text of former § 58.180 had also been rescripted into the then subsistent version of the Manual of Instruction as provisions of the extant Traffic Code of Kansas City.

These ordinances, as well as the page of the subsistent Manual which published them, were presented on deposition by Don Stein, Custodian of Records with the Fire Department. In the course of that deposition, counsel for Jorgensen insinuated into the examination a distinction between the ordinance as an enactment and the publication of that ordinance in the current Manual as a "regulation." The examiner then engaged this colloquy:

Q. You are saying Exhibit 5 [§ 34.31 as published in the 1981 Manual] was in effect in March of 1981?

A. That's correct.

Q. But you are not necessarily saying that what's on Exhibit 2 [§ 58.180 as published in the earlier Manual] was not in effect in October of '83?

A. That's correct.

This interchange, the defendant ad litem argues, shows that the repeal of the 1960 § 58.180 ten-mile-per-hour ordinance by the 1972 § 34.31 "slowing down as may be necessary for safe operation" ordinance notwithstanding, and the adoption of the § 34.31 "regulation" by the 1981 Manual notwithstanding, the repeal of the prior ten-mile-per-hour "regulation" was not shown, and hence the defendant ad litem was entitled to the benefit of that evidence against the claims of Kansas City and Gussman.

The ready response is that there was no evidence that the provisions of the Traffic Code each manual rendered were administrative promulgations, actual or intended. The very text of the 1981 Manual recites: "The following provisions are stated in the Traffic Code, Chapter 34 of the Administrative Code, Sec. 34.31, Authorized emergen-

cy vehicles"—and the rescript of the subsistent ordinance follows verbatim. The description of the subject matter in that component of the Manual is *"Traffic Regulations* as Applied to Authorized Emergency Vehicles" [emphasis added]. The text of the earlier Manual is preceded by the simple legend: "TRAFFIC CODE of Kansas City, Missouri, March 10, 1969," and the rescript of then § 58.180 follows verbatim. The term *"Traffic Regulations* as Applied to Authorized Emergency Vehicles" [as the 1981 Manual describes the published subject matter] obviously renders, more tersely, "municipal traffic regulations"—that is, enacted ordinances—and not independent departmental standards or regulations. The Manual, as revised from time to time, merely subserves to inform a firefighter the state of the Traffic Code as it then applies to authorized emergency vehicles. In the words of Custodian of Records Stein: "[The Manual] was just going out for their information."

The court properly refused the proposed inquiry of witness Gussman as to whether, during the course of training to become a fire apparatus operator there was "any rule or regulation suggesting that you are to go only ten miles per hour through controlled intersections." The earlier ordinance which enacted that prescription was repealed, and no rule or regulation of like effect was in evidence or tendered.

*The Exclusion from Evidence that Gussman Knew the Alarm Was Not a True Emergency*

The defendant ad litem asserts next that the grant of new trial was proper because it was error for the court to have excluded evidence that Gussman, the fire truck apparatus driver, knew at the outset of the emergency run that the alarm was merely a report of an odor of gas, and not a true emergency. He argues that "the state of mind of the Defendant Gussman and the information he had about the alarm goes directly to the reasonableness of his actions," and hence the refusal of the trial court to allow the jury to hear this evidence—relevant on the reasonableness of the Gussman conduct as he operated the

fire truck into the intersection against the red light—was error. The order of the court foreclosed the inquiry and evidence by an order in limine prompted by the motion of the defendants Kansas City and Gussman.

■ The argument of the defendant ad litem consists of assertions of fact and other "proofs" that the jury, without the evidence excluded, "were misled to conclude that this emergency alarm was in the nature of a fire or threat to life." We have before us only the motion in limine of the defendants. We are not presented with an offer of proof, or even a record of the arguments of counsel to the court. The error the defendant ad litem asserts is only *ipse dixit.* To preserve the review of a contention of error upon the exclusion of evidence, the proponent must show an offer of proof to the trial court as to the evidence the witness will give, the purpose and object of the testimony, and all facts necessary to establish its admissibility. *Keeshan v. Embassy Investment Company,* 303 S.W.2d 666, 669[1, 2] (Mo.App. 1957). There is no indication that the defendant ad litem tendered any such proof by witness Gussman to the trial court. There is only indication that, in fact, *Authorized emergency vehicles* ordinance § 34.31 was made an exhibit, and so part of the trial evidence, by counsel for the defendant ad litem [as counsel for the plaintiff Jorgensen]. That the collision involved a fire truck en route to an emergency alarm, therefore, was not in actual dispute. The point of error is denied.

*The Third Party Petitions of Defendants Kansas City and Gussman as Jurisdictional Defects*

The suit was commenced by Fern Jorgensen as an action for the wrongful death of her husband, George Jorgensen, caused by the collision between the vehicle he operated and the fire truck owned by defendant Kansas City and operated by Fireman defendant Gussman. The defendant Kansas City formally informed the court that it proposed to bring a third party action to recover for damage to the fire truck from that occurrence, that the deceased driver Jorgensen was insured against liability for damage from wrongdoing, and moved the court to appoint a third party defendant ad litem to enable suit and service in the manner prescribed by § 537.021, RSMo Cum. Supp.1987.[2] The motion went without objection, and Kit C. Roque, Esquire, was designated the third party defendant ad litem for the deceased George Jorgensen. The defendant Kansas City as third party plaintiff brought a third party petition for property damage against the third party defendant ad litem, and the defendant Gussman as third party plaintiff brought a third party petition for personal injury against the third party defendant ad litem.

The motion for new trial of third party defendant ad litem Roque asserts that the grant of new trial was proper because neither the claim of Kansas City nor of Gussman against the defendant ad litem was a third party claim, thus the third party petition of neither stated a claim upon which relief could be granted, and the court was without power to adjudicate them.

2. 1. The existence of a cause of action for an injury to property, for a personal injury not resulting in death, or for wrongful death, which action survives the death of the wrongdoer or the person injured, or both, shall authorize and require the appointment by a probate division of the circuit court of:

. . . .

(2) A personal representative of the estate of a wrongdoer upon the death of such wrongdoer; provided that, if a deceased wrongdoer was insured against liability for damages for wrongdoing and damages may be recovered from the wrongdoer's liability insurer, then the court in which any such cause of action is brought shall appoint at the request of the plaintiff or other interested party a qualified person to be known as a defendant ad litem. The defendant ad litem when so appointed shall serve and act as the named party defendant in such actions in the capacity of legal representative of the deceased wrongdoer and such appointment and any proceedings had or judgment rendered in such cause after such appointment shall be binding on the insurer of such deceased wrongdoer to the same extent as if a personal representative had acted as the legal representative of such deceased wrongdoer in such cause of action. . . .

■ Rule 52.11 provides that "a defending party, as a third-party plaintiff, may cause a summons and petition to be served upon *a person not a party to the action who is or may be liable to him for all or part of plaintiff's claim against him.*" [emphasis supplied] The rule contemplates "that the claim asserted, if proved, would transfer the liability asserted against the defendant/third-party plaintiff to the third-party defendant." *State ex rel. Green v. Kimberlin,* 517 S.W.2d 124, 127[3, 4] (Mo. banc 1974). Thus, if a third-party plaintiff could proceed and recover against the third-party defendant even if the third-party plaintiff were to prevail in the suit brought by the plaintiff, the third-party petition is not within Rule 52.11, and should be stricken. *State ex rel. Ashcroft v. Gibbar,* 575 S.W.2d 924, 929[6–10] (Mo.App. 1978). It is evident that the claims of Kansas City and Gussman against the defendant ad litem as legal representative of the deceased Jorgensen under § 537.021.-1(2) do not operate to pass on the liability the widow Jorgensen claimed against them to the defendant ad litem of the deceased Jorgensen. It is evident also that Kansas City and Gussman could recover against the deceased Jorgensen even if Kansas City and Gussman defeated the claim of the widow Jorgensen. The claims against the defendant ad litem, therefore, were not means to transfer liability, but to establish primary liability from the defendant ad litem to Kansas City and Gussman, whatever the fate of the original claim for wrongful death by the widow against the defendants. In a word, the petition of each, Kansas City and Gussman, against the defendant ad litem Roque was not within the sanction of third-party practice Rule 52.11.

The defendant ad litem contended on the motion for new trial, and before us, that the third-party petitioners were insufficient under Rule 52.11, thus trial court was without power to adjudicate the Kansas City

and Gussman claims by third-party petition, and hence the grant of a new trial to the defendant ad litem as to the judgments entered on Verdict B and Verdict C was valid, if for no other reason. The defendant ad litem does not contend that the pleading of each defendant, Kansas City and Gussman—whatever the rubric or form—does not state a cause of action based on the negligent conduct of the deceased Jorgensen. In such a case, the remedy Rule 52.11 prescribes is not to dismiss the pleading not the proper subject of a third-party petition, but to strike the mistaken pleading. In such a case, the order to strike does not rule the merits—that the pretended third-party petition does not state a cause of action—but only that it is not a subject for consideration in the litigation. *State ex rel. Ashcroft v. Gibbar,* 575 S.W.2d at 929[6–10]; *AAA Excavating, Inc. v. Francis Construction, Inc.,* 678 S.W.2d 889, 894[13–15] (Mo.App.1984); *Pierce v. Ozark Border Electric Cooperative,* 378 S.W.2d 504, 508[5] (Mo.1964). The defendant ad litem tendered no motion to strike. There was no objection to the overture of the defendant Kansas City for the appointment of a defendant ad litem to enable a third-party claim, nor to the third-party petition of each Kansas City and Gussman although the motion and each petition lacked altogether either allegation or an intimated legal effect—indispensible to the operation of Rule 52.11—that the defendant ad litem was "or may be liable to [Kansas City and Gussman] for all or part of [the widow Jorgensen's] claim against [them]."

■ The principals, rather, undertook and accomplished the trial of the causes of action as claim and compulsory counterclaims—which by definition of practice and function they indeed were.[3] The jurisdiction to adjudicate the Kansas City and Gussman claims [counterclaims] was perfected by the joinder of the defendant ad

---

**3.** "Rule 55.32

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of

third parties of whom the court cannot acquire jurisdiction...."

The two rules—third-party practice Rule 52.11 and counterclaim Rule 55.32—although disparate as to function, share an affinity of purpose: the end of judicial economy. *State ex rel. Green v. Kimberlin,* 517 S.W.2d at 126[1, 2]; *State ex*

litem under § 537.021.1(2) as legal representative of the deceased tortfeasor Jorgensen.[4] The instructions of the de facto counterclaimants Kansas City and Gussman were submitted on theories of the breach of duty by the deceased Jorgensen to each, Kansas City and Gussman, and the incurrence of damage by each as the proximate result. The instructions of the de facto defendant ad litem Roque were submitted on the theory that neither Kansas City nor Gussman proved a breach of duty by the decedent Jorgensen to either, or damages to either, as a consequence. Verdict B and Verdict C resolved the issues for each counterclaimant. The judgments entered on the verdicts were adjudicated by a court with jurisdiction of the subject matter and of the parties, notwithstanding the causes of action the verdicts render were formulated by imperfect pleadings. Rules 55.04 and 55.24.

The "third-party petition" of each, Kansas City and Gussman, invoked substantive principles of law which, if established by evidence, entitled each to relief—and hence was not amenable to dismissal. The defendant waived the order to strike, the sanction Rule 52.11 prescribes as the remedy for pleadings of the kind the "third-party petitions" present. The motion for new trial of the defendant ad litem was improperly granted and is reversed. Verdict B and Verdict C were proper as returned and the circuit court is ordered to enter judgment on them.

## THE ORDER TO TAX AS COSTS AGAINST THE DEFENDANTS KANSAS CITY AND GUSSMAN THE COMPENSATION ALLOWED THE DEFENDANT AD LITEM

The order of new trial to the plaintiff widow Jorgensen and the defendant ad litem for deceased Jorgensen also sustained the application of defendant ad litem Roque for compensation, and awarded $825.50, and taxed the sum as costs, one-half against the defendant Kansas City and one-half against the defendant Gussman. The defendant ad litem was appointed to act in the litigation under § 537.021 at the request of the defendant Kansas City, and to enable its "third-party petition"—actually counterclaim for property damage. The statute prescribes [§ 537.021.3]: "The defendant ad litem may be allowed a reasonable fee by the court appointing him which shall be taxed as court costs." The defendants Kansas City and Gussman do not contest the reasonableness of the award to the defendant ad litem, but argue that since the verdicts were for them on the "third-party petitions" [counterclaims], they were the *prevailing parties* within Rule 77.01[5] and hence were entitled to the assessment of those costs against the defendant ad litem. The defendant ad litem argues that the verdicts for Kansas City and Gussman on their counterclaims notwithstanding, the order of a new trial as to the judgments entered on those verdicts rendered the defendant ad litem *the prevailing party* entitled to recover the costs of those causes of action—the compensation to the defendant ad litem, included.

Our decision reinstates Verdict B and Verdict C on the counterclaims of the defendants Kansas City and Gussman against the defendant ad litem Roque. In the usual course hitherto, the *prevailing party* for the purpose of an award of costs in an action in which both the plaintiff and defendant succeeded on affirmative claims for money, was the party in whose favor

---

*rel. J.E. Dunn v. Schoenlaub,* 668 S.W.2d 72, 75[8–11] (Mo. banc 1984).

4. The effect of Rule 55.32(a) is not avoided because at the time the counterclaim must be asserted there may not be a complete mutuality and identity of parties. *Schneeberger v. Hoette Concrete Construction Company,* 680 S.W.2d 301, 303[2, 3] (Mo.App.1984). The rule limits the obligation to counterclaim to those occasions where, as here, the court can acquire jurisdiction over a third party required for a

valid adjudication. *Barclay Investment Corporation v. Lamkin,* 408 S.W.2d 168, 170[1–2] (Mo. App.1966); Rule 52.04; § 537.021.1(2); and *see Stancill v. McKenzie Tank Lines, Inc.,* 497 F.2d 529, 532[1] (5th Cir.1974).

5. "In civil actions, the party prevailing shall recover his costs against the other party, unless otherwise provided in these rules or by law." This rule is the counterpart of § 514.060, RSMo 1986.

final judgment was rendered. That has been on the theory that "[t]here can be but one prevailing party in an action at law for the recovery of a money judgment." *Ozias v. Haley,* 141 Mo.App. 637, 125 S.W. 556, 557 (1910). It has been the theory and practice under § 514.110, moreover, that in actions *ex delicto:* "[I]f the plaintiff recover *any* damages he shall recover the costs." Thus, under that statute, a party who recovers on an affirmative claim for money damages [such as a counterclaim] on a tort cause of action is *ipso facto* the "prevailing party" and *shall* recover costs. *Haley v. Byers Transportation Company,* 394 S.W.2d 412, 417[10, 11] (Mo.1965), *appeal after remand,* 414 S.W.2d 777 (Mo. 1967). Moreover, under actions *ex delicto* § 514.110, the court is without discretion or power to apportion costs. *Vineyard v. Lynch,* 86 Mo. 684 (1885); *Haseltine v. St. L. & S.F. Ry. Co.,* 39 Mo.App. 434, 440 (1889); *Ozias v. Haley,* 125 S.W. at 557; *O'Donniley v. Kinley,* 220 Mo.App. 284, 286 S.W. 140, 142[7, 8] (1926).

■ In the context of the Comparative Fault Act our law adopts, a claim and a counterclaim are not set off against the other. Rather, each presents a *separate* issue. Comparative Fault Act § 3, Commissioners Comment. In the case of money judgments on multiple causes of action *ex delicto* under this system, counterclaims do not reduce claims—only the comparative fault of each actor does. Thus, as here— the claimant and counterclaimants may all have verdicts based on damages proximately incurred from the breach of duty owed by one to another—and then have them entered as judgments as reduced by the court by the percentage of fault assessed to that actor. MAI 37.03 [1986 New]. Under the rule of decisions rendered under § 514.060 [Rule 77.01] and *ex delicto* § 514.110, each of the affirmative claimants—the widow Jorgensen, Kansas City, and Gussman—is a *prevailing* party. Each is entitled to recover costs of the action according to the percentage of comparative fault found against the other party—10% recovery by the widow Jorgensen against defendants Kansas City and Gussman and 90% recovery by counterclaimants

Kansas City and Gussman from defendant ad litem Roque. § 514.160.

The judgment of the trial court for new trial is affirmed as to the plaintiff widow Jorgensen on the issue of damages only, and is reversed as to the defendants-counterclaimants Kansas City and Gussman with directions that the judgments be entered according to the jury verdicts in their favor.

All concur.