## In re MIDLANTIC CORPORATION SHAREHOLDER LITIGATION.

### Civ. No. 90–1275 (DRD).

United States District Court, D. New Jersey.

Oct. 11, 1990.

Barrack, Rodos & Bacine, Leonard Barrack, Anthony J. Bolognese, Cherry Hill, N.J., for plaintiffs Cheryl Cohen, Custodian for Jason Mark Cohen, Rose B. Rosenbaum, and Barry F. Schwartzman, Co-lead Counsel for Class.

Greenfield & Chimicles, Richard D. Greenfield, Mark C. Rifkin, Haverford, Pa., for plaintiff Gerry Banmiller and Co-lead Counsel for Class.

Gross & Metzer, Debra R. Gross, Anne D. White, Philadelphia, Pa., for plaintiff Labov and Counsel in the Derivative Claims.

Pitney, Hardin, Kipp & Szuch, Clyde A. Szuch, Dennis R. LaFiura, Morristown, N.J. (Skadden, Arps, Slate, Meagher & Flom, Jeremy Berman, New York City, of counsel), for defendants.

## OPINION

DEBEVOISE, District Judge.

Pursuant to Federal Rule of Civil Procedure 12(b)(6) defendant Midlantic Corporation and individual defendants Van Buren, Peraino, Rishel, McDonald, Fox, Holman, Hough, and Lewis move to dismiss plaintiffs' complaint for failure to state a claim on which relief can be granted. Specifically, defendants claim that the causes of action alleged in plaintiffs' Consolidated Amended and Derivative Complaint (hereafter "Complaint") sounding in fraud under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, have been pled with insufficient particularity under Federal Rule of Civil Procedure 9(b). Defendants also claim that several Counts allege failures to disclose mismanagement and to make financial predictions and are thus not actionable under Section 10(b) and Rule 10b–5. Furthermore, defendants move for dismissal of plaintiffs' claims under Sections 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78n(a), 78t(a), and plaintiffs' shareholder derivative action under Federal Rule of Civil Procedure 23.1 for failure to plead facts sufficient to support actionable claims. Likewise, the legal sufficiency of plaintiffs' pendent state law claim alleging negligent misrepresentation under New Jersey law is challenged for failure to plead adequate facts to sustain a cause of action.

Plaintiffs have voluntarily dismissed Count II of the Complaint. Thus plaintiffs do not oppose defendants' motion to dismiss as to Count II of the Complaint asserting claims under Sections 11, 12 and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77*l* (2), 77*o*. Accordingly, this opinion will not address the issues raised by defendants with respect to these claims.

## FACTS

Midlantic Corporation [hereafter "Mid-

lantic"] [1] is an interstate bank holding company with assets of approximately $23.7 billion dollars and operations primarily serving the mid-Atlantic region but with offices scattered throughout Pennsylvania, New Jersey, Florida, Delaware, Maryland, London, Hong Kong, and the Cayman Islands. Complaint ¶ 6. Midlantic was formed in January 1987 by the reorganization of CBI and Midlantic Banks, Inc. Complaint ¶ 16. Dubbing itself "the Hungry Bankers", Midlantic then engaged in an aggressive expansion campaign which allegedly entailed making increasingly risky loans and investments concentrated in real estate, construction and leveraged buy-outs (LBOs). Complaint ¶¶ 17–19, 30(a).

Plaintiffs allege that this expansion program required Midlantic to maximize reported earnings to paint a glowing picture of financial health that veiled the enormous risks assumed by its recent investments and the concentration of its capital committed to such high-risk ventures. As a consequence of this alleged need to boost the profits on the books and conceal the risks entailed by defendants' strategy for expansion, plaintiffs allege that the pressures to continue Midlantic's fast-paced growth led defendants to "under-reserve for potential loan losses and to avoid acknowledgment of the risks inherent in the loans and investments" made by the corporation. Complaint ¶ 19. In other words, Midlantic failed to set aside sufficient funds to cover the amount of loans and investments likely to become non-performing and thus posing a likelihood of vast losses. Plaintiffs further allege that these pressures, inherent in Midlantic's expansion drive, also led defendants to make material misstatements of fact and material omissions of fact in public announcements and publications that perpetuated the illusory image of a financially untroubled corporation experiencing rapid growth of assets and profits which was a safe investment opportunity. The gravamen of plaintiffs' Complaint is their allegation that these material misstatements and omissions were designed to and did in fact induce prospective investors to purchase Midlantic securities at artificially high prices to raise badly needed capital during a period from March 27, 1987 and April 5, 1990 [hereafter "the class period"]. *See* Complaint ¶¶ 7(f), 22–23, 29–39.

On December 20, 1989, Midlantic added $75 million dollars to its loan loss reserves. Plaintiffs allege this increase was accompanied by false and misleading statements to "downplay and conceal the material extent to which the [Midlantic]'s earnings, assets, and shareholders' equity had been overstated, and possible loan losses had been understated." Complaint ¶ 26. Midlantic's loan loss reserves were again increased on April 6, 1990, this time by $110 million. Complaint ¶ 27. Plaintiffs claim that defendants again responded with materially false public statements. *Id.* The speculative bubble Midlantic had allegedly become apparently burst at or about this time. April 5, 1990 marks the end of the class period, during which plaintiffs claim they and other investors in Midlantic securities were misled by defendants' statements and purchased securities at inflated prices.

Midlantic's securities, traded on the NASDAQ exchange, tumbled in price following the announcement that loan loss reserves were to be dramatically increased. Consequently, Midlantic's shareholders absorbed the loss from this fall in the value of their Midlantic securities. A number of these shareholders brought class actions and one derivative action was brought on behalf of Midlantic against the individual defendants for damages incurred as the true financial state of Midlantic came to be appreciated by the financial markets. All actions were consolidated by Pre–Trial Order No. 1 on May 25, 1990.

Plaintiffs' first complaint was filed with the Clerk of this Court on March 28, 1990 and a Consolidated Amended Class and Derivative Complaint on May 25, 1990. A second Consolidated Amended Class and Derivative Complaint was filed June 5,

---

**1.** "Midlantic", for purposes of this opinion, stands for the holding company and all its subsidiaries.

diaries.

1990. They claim, *inter alia*, that Midlantic, its senior officers, and its directors made a practice of issuing misleading statements and engaging in suspect accounting and managerial practices to conceal risks lying at the very foundation of its loan and investment portfolios and in this manner induced members of the public to invest in Midlantic without the benefit of material information which would have led them to invest elsewhere.

Defendants filed this motion July 31, 1990 to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b), for lack of actionable subject matter as to the state law Counts III and V, and for insufficiency of service of process as to individual defendants Fox, Holman, Hough and Lewis.

Defendants' motion to stay merits discovery was denied by Order dated August 17, 1990 which set a schedule for discovery and production of specified classes of documents. Plaintiffs were to receive the first "wave" of discovery materials, nine categories of documents, on September 4, 1990. A hearing on class certification has been postponed until the disposition of this motion to dismiss.

## DISCUSSION

Defendants bring a Motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Pursuant to Rule 12(b)(6), plaintiffs' complaints must be dismissed for failure to state a claim if defendants demonstrate "beyond a doubt that plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980). All allegations set forth in the complaint must be accepted as true, *see Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Walck v. American Stock Exchange, Inc.,* 687 F.2d 778, 780 (3d Cir.1982), and all reasonable inferences must be drawn in plaintiff's favor, *see McKnight v. Southeastern Pennsylvania Transportation Authority,* 583 F.2d 1229, 1235–36 (3d Cir.1978). To withstand the motion, it "is not necessary to plead facts upon which the claim is based." *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 446 (3d Cir.1977).

## PLEADING REQUIREMENTS FOR FRAUD CLAIMS UNDER RULE 9(b)

The majority of defendants' arguments in favor of this motion to dismiss involves the sufficiency of plaintiffs' pleading fraud with particularity under Federal Rule of Civil Procedure 9(b). Thus the standard for pleading fraud under the Rule as construed by the Court of Appeals for the Third Circuit is the logical starting point in considering this motion. Rule 9(b) states

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of the mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). The simplicity of this Rule, evident from the text, requires judicial interpretation to properly apply it to complex factual contexts. However, any interpretation given the Rule must be informed by an awareness that "focusing exclusively on the particularity requirement is 'too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.' " *Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96, 100 (3d Cir.1983) (quoting C. Wright & A. Miller, 5 *Federal Practice and Procedure* § 1298, at 407 (1969)); *see In re Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628, 645 (3d Cir.1989); *Kronfeld v. First Jersey National Bank,* 638 F.Supp. 1454, 1463–65 (D.N.J.1986).

The Third Circuit's decision in *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786 (3d Cir. 1984) sets forth the standard by which the pleading of a fraud claim under Rule 9(b) is evaluated. In that case the Court found that where the complaint had identified specific "pieces of machinery that were the subject of the alleged fraud," the plaintiff had satisfied Rule 9(b) by pleading the cir-

cumstances constituting the fraud. The District Court dismissed the complaint "because [plaintiff] did not describe the date, place or time of the phone calls and letters defendants allegedly used in furtherance of their fraudulent scheme.... failed to set forth 'with even minimal particularity the details of the alleged fraud or misrepresentations.'" *Seville*, 742 F.2d at 791 (quoting *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 567 F.Supp. 1146, 1156 (D.N.J.1983)).

The Court of Appeals reversed, concluding that the "complaint [set] forth the nature of the alleged misrepresentations, and while it [did] not describe the precise words used, each allegation of fraud adequately describes the nature and subject of the misrepresentation." *Seville*, 742 F.2d at 791 (footnote omitted). In reaching this conclusion, the Court stated that

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendant on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.

*Id.*

This Court has held that a Complaint pleads fraud with sufficient particularity where it: (1) "quotes verbatim from the alleged representations", (2) explains "the context in which the representations were made", (3) "described the various defendants involved in the investment program as well as their roles in the scheme", and (4) plaintiffs submitted exhibits in support of the accounts contained in the complaint. *CFTC v. American Metal Exchange Corp.*, 693 F.Supp. 168, 190–191 (D.N.J.1988). The court in *American Metal Exchange* held further that "even absent allegations with respect to the exact factual context or words constituting the misrepresentation, a description of the nature and subject matter of the representation is sufficient." *Id.* at 190 (discussing *Seville*, 742 F.2d 786 (3d Cir.1984) and citing *Kronfeld v. First Jersey National Bank*, 638 F.Supp. 1454, 1464 (D.N.J.1986)).

■ This flexible approach to the issue of pleading fraud allows for some play in the inherent tension between ensuring that the policies underlying federal securities legislation are effected through the prosecution of civil suits against violators and the policies embodied in Rule 9(b), namely: "(1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his goodwill, and (3) to reduce the number of strike suits." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). The courts' reconciliation of this tension is thus partially dependant on the facts of each case. If the pleaded facts and supporting allegations permit the inference of a colorable claim for fraud and afford the defendant notice as to which actions or communications are alleged to have been fraudulent, the complaint will withstand a motion to dismiss.

■ In the recent Third Circuit case of *In re Craftmatic Securities Litigation*, the Court provided an additional rationale for adopting a flexible approach to pleading fraud in securities cases. "Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud,'" 890 F.2d at 645 (quoting *Christidis*, 717 F.2d at 99–100). Securities cases, always tending toward the complex, have become even more sprawling, labyrinthine and complicated with developments in corporate finance. In the face of such contemporary developments the courts must adjust the balance between Rule 9(b)'s requirement of pleading fraud with particularity and the need to ensure that the securities laws continue to be effective countermeasures to corporate corruption. As the Third Circuit made clear in *Craftmatic:*

> "Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corpo-

rate internal affairs. *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987); C. Wright & A. Miller, § 1298 at 416. Thus, courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989); *Michaels Building Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir.1988); *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1248 (2d Cir.1987); *see Saporito v. Combustion Engineering Inc.*, 843 F.2d 666, 675 (3d Cir.1988) (pleadings do not satisfy Rule 9(b); no reason to believe that additional information is in the exclusive control of defendant), *vacated on other grounds*, 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989).

890 F.2d at 645. The Court went on to caution "[n]onetheless, even under a nonrestrictive application of the rule, pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based." *Id.* Still, the Court expressly declined to adhere to the "rigid enforcement" of Rule 9(b) in securities fraud cases. *Id.* at 645–646.

■ The allegations contained in plaintiffs' Complaint conform to the pleading criteria set forth in *Seville* and *American Metal Exchange*. The Complaint quotes verbatim and at great length the representations alleged to have been fraudulently made. The time and context of the statements have been pled with great specificity. The parties making the representa-

tions, be they Midlantic or the individual defendants have also been included in the pleadings.

■ It appears that some of these allegations appear on their face to be qualitative statements referring to the quality of Midlantic's credit standards and practices, loan and investment diversity, and "conservative" financial management.[2] Although such statements inject a degree of subjective imprecision into the allegations, it cannot be said that the statements alleged to be false cannot form the basis of a claim sounding in fraud. To hold otherwise would allow corporations and those charged with their management to issue statements calculated to mislead investors by couching them with glowing yet relatively vague language, knowing full well that the investing public would attach to them meanings inducing them to invest in a corporation they otherwise would avoid.

■ The basis for plaintiffs' claim that the statements were fraudulent remains at its foundation a factual matter. While statements concerning the quality and stability of Midlantic's loans, portfolio diversity, adequacy of its loan loss reserves, and philosophy of its management appear to express mere matters of opinion, each allegation contains, at a minimum, a kernel of fact. Each of these matters are subject to proof or disproof as accurate economic evaluations of the financial condition of the corporation. Plaintiffs are entitled to continue with this action to subject their assertions to this process of proof. Rule 9(b) does not require that a plaintiff plead with such particularity that the cause of action

---

**2.** By way of example only, plaintiffs allege that the following statements were materially false and made with fraudulent intent:

"Building the loan portfolio has meant an adherence to stringent credit criteria. Midlantic has combined an aggressive leading culture with an excellent record of credit quality that is superior to peer group banks." Midlantic's Annual Report, February 16, 1989.

"Midlantic's overall credit quality remains sound, the loan portfolio is well structured and we are appropriately reserved.

　　　*　　*　　*　　*　　*

The Corporation's balance sheet is fundamentally sound and its capital remains strong." Midlantic's Second Quarter Report, August 4, 1989.

"On December 20, 1989, Midlantic Corporation announced an increase of $75 million in its forth quarter loan loss provision. This action was taken to reflect the weakened values, and was in keeping with our Company's policy of maintaining an above-average reserve for possible loan losses. This amount will increase our loan loss reserve to a level in excess of industry norms." Letter to Shareholders from Defendants Van Buren and Peraino, December 26, 1989.

Complaint ¶ 22.

be proven prior even to the summary judgment stage of the litigation.[3] At the present stage of this litigation, plaintiffs' allegations must be accepted as true. *See D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984). Given this posture, favorable to the plaintiffs, the allegations constitute an actionable factual basis for a securities fraud claim.

Nor do defendants' objections that plaintiffs failed to plead scienter with sufficient particularity warrant dismissal of the Complaint. Rule 9(b) clearly states that "... knowledge and other condition of mind of a person may be averred generally." Fed.R. Civ.P. 9(b). Furthermore, given the present posture of this case all reasonable inferences that can be drawn from the pleadings must be drawn in favor of the plaintiff. Given this constraint, defendants' argument that plaintiffs' assertions of scienter are overly conclusory and thus not actionable is specious. Even if I were inclined to accept defendants' characterization, which appears to be a gross oversimplification, the allegations readily permit the inference that defendants are accused of possessing the requisite scienter to state a cause of action for fraud. *See In re Craftmatic Securities Litigation*, 890 F.2d at 645–646 ("A projection that is issued without a reasonable basis is an untrue statement and actionable under § 10(b) and Rule 10b–5 and is made knowingly or recklessly."); *American Metal Exchange*, 693 F.Supp. at 191 (citing *Kronfeld*, 638 F.Supp. at 1465).

**3.** In this regard, defendants' argument that plaintiffs have not pled the nature of the statements' falsity with sufficient particularity overstates the burden that Rule 9(b) places on a plaintiff. Defendants cite repeatedly to *Christidis* for the proposition that plaintiffs are required to plead why a statement was false by demonstrating its falsity using generally accepted accounting principles. First, the case does not stand for this proposition; the case involved a complaint that specifically alleged as its *only* ground for demonstrating falsity which made the pleading of such accounting principles and an indication of how they would be applied essential to state a cause of action. Second, *Christidis* displayed a far less charitable bearing

■ Finally, defendants' last challenge under the pleading rules for fraud maintains that plaintiffs' allegations of fraud against the defendants collectively rather than individually are fatally defective for not attributing to each individual defendant specific wrongful acts of misrepresentation. This Court has held that a plaintiff need not plead with specificity which fraudulent acts were caused or performed by which individual defendants. *See In re First Fidelity Bancorporation Securities Litigation*, Fed.Sec.L.Rep. (CCH) ¶ 95299 (D.N.J. Nov. 13, 1989) at 96,392, 1989 WL 222603; *see also Petro–Tech, Inc. v. Western Company of North America*, 824 F.2d 1349, 1362 (3d Cir.1987). In *First Fidelity* the Court observed that

> The complaint clearly alleges the circumstances of fraud, and the Court concludes that where multiple defendants are involved, each in high ranking positions, there is no requirement at this stage of the proceedings to specify what each defendant individually is alleged to have done.
>
> It would be virtually impossible before there has been any discovery for the plaintiffs to delineate which defendants were responsible for which acts.
>
> To require ... plaintiffs in this type of action [to] identify the specific wrongful acts attributable to particular defendants would place an insurmountable goal and burden to the maintenance of such actions.

*First Fidelity*, Fed.Sec.L.Rep. (CCH) ¶ 95299 (D.N.J. Nov. 13, 1989) at 96,392, 1989 WL 222603. The foregoing passage

toward pleading securities fraud than do the later cases *Seville* and *In re Craftmatic Securities Litigation*. To the extent that *Christidis* differs in this respect from the cases that followed it, the latter two cases supply the surer guidance and more persuasive authority.

While plaintiffs do not allege the falsity of the statements by resort to an application of generally accepted accounting standards, they have alleged the manner in which the statements are false and adequate facts to permit an inference of falsity. Defendants are more than adequately apprised of the basis for plaintiffs' claims on the falsity issue. Accordingly, defendants' argument that falsity has not been pled adequately under Rule 9(b) is untenable.

applies fully to the instant matter. Therefore, the Complaint will not be dismissed on this ground.

ACTIONABLE GROUNDS FOR FRAUD UNDER § 10(b) AND RULE 10b–5

■ Defendant argues that plaintiffs allege no more than mere mismanagement of Midlantic as the source of their woes. The argument continues that under *Santa Fe Industries v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), mismanagement is insufficient as grounds for an action under § 10(b) and Rule 10b–5. Defendants correctly state the holding of *Santa Fe,* but their application of that holding to the present case has no merit. It is well established in the Third Circuit that *Santa Fe* does not apply where defendants have "engaged in conduct expressly forbidden by the statute and the rule." *Healy v. Catalyst Recovery of Pennsylvania, Inc.,* 616 F.2d 641, 646 (3d Cir.1980). In *Biesenbach v. Guenther,* 588 F.2d 400, 402 (3d Cir.1978), the Court of Appeals "stated that the failure to disclose the motive behind a directors decision is not actionable *unless accompanied by objective and external deeds or omissions." In re Craftmatic Securities Litigation,* 890 F.2d at 638 (commenting on *Biesenbach* ). "The crucial difference is whether there was misrepresentation or omission in the flow of information ..." *Healy,* 616 F.2d at 646; *see In re Craftmatic Securities Litigation,* 890 F.2d at 639.

Plaintiff has alleged material misrepresentation and omission in plenty. The allegations assert that defendants made numerous representations with the knowledge they were false and for the fraudulent purpose of inflating the market values of Midlantic securities and inducing investors to purchase these securities at these prices. The complaint also alleges that defendants failed to disclose true material facts known to them in order to achieve these same ends. That the duty to disclose such facts may derive from fiduciary duties in addition to those duties imposed by the federal securities laws is of no moment. *See In re First Fidelity Bancorporation Securities Litigation,* Fed.Sec.L.Rep. (CCH) ¶ 95,299 at 96,391, 1989 WL 222603.

It is reasonably, indeed readily, inferred from the Complaint that plaintiffs statements regarding the sufficiency of loan loss reserves and the character of Midlantic's portfolio were affirmative acts to defraud. Defendants' omissions as to these subjects are alleged to have occurred while they had the requisite scienter for fraud and occurred within the context of consistently misleading public statements. Taken as a whole, the complaint alleges, and unquestionably supports the inference, that defendants engaged in conduct exceeding the boundary of mismanagement and crossing into fraud. The allegations contained in the Complaint are therefore actionable.

■ Defendants also contend that plaintiffs' allegations that defendants' failure to make certain predictions are not actionable under § 10(b) and Rule 10b–5. In particular, plaintiffs allege that: (1) defendants failed to "predict" that Midlantic would have to add $75 million and then another $110 million to its loan loss reserves; (2) its concentration of real estate and construction loans presented extreme risks of losses; and, (3) regulatory examinations by federal officials would have an adverse impact on Midlantic's financial results. Complaint ¶ 30(g)–(j). Defendants argue that these allegations are far too speculative in nature to be actionable.

These allegations are not properly considered "predictions". Plaintiffs accuse defendants of *knowing* that the loan loss reserves would *have* to be increased and failed to disclose this fact and in fact made material misstatements maintaining that Midlantic's loan reserves were more than sufficient.[4] This does not constitute failing

---

4. Thus the issue that arises with respect to these allegations is really one of scienter. The allegations of scienter have already been held, *supra,* to be adequately pled. Scienter having been satisfied, whether these allegations can be considered material is not an issue that need be addressed here and should be left for a jury. *See NUI Corporation v. Kimmelman,* 593 F.Supp. 1457, 1467 (D.N.J.1984).

to make a speculative judgement call as to the future state of the corporation; rather, it is an accusation premised on facts alleged with sufficient particularity to sustain a claim of fraud against a motion to dismiss.[5] The third allegation appears on its face to be more of a baseless prediction. However, the paragraph may be construed to allege that either (1) a federal regulatory investigation was ongoing, or (2) that in a heavily regulated industry such as banking and securities trading a regulatory investigation was inevitable. When these reasonable inferences are drawn from the allegation, in either event defendants' statements failed to address a material fact likely to have a major impact on Midlantic's financial standing. Either of these inferences would transform what initially appears to be a mere prediction into a factual issue of materiality beyond the scope of inquiry on a motion to dismiss. Hence, plaintiffs' Complaint will not be dismissed on this ground.

### CAUSATION BETWEEN THE ALLEGED FRAUD AND SECURITIES SALES

■ Defendants argue that plaintiffs fail to plead that the alleged material misstatements were made "in connection with" securities transactions. Specifically, defendants assert that because many of the alleged misstatements and omissions were made towards the end of the class period it is impossible to discern which of the representations, or lack thereof, exerted an effect on plaintiffs' securities holdings. This argument is without merit. The Third Circuit has unequivocally held that the "in connection with" requirement requires merely "some causal connection between the alleged misrepresentation and the harm incurred when a security is purchased or sold." *Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir. 1985) (citing *Ketchum v. Green,* 557 F.2d

1022, 1028 (3d Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 300 (1977); *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 194 (3d Cir.1976)). Plaintiffs have pled a connection between their injury, sustained by purchasing securities at inflated prices, and defendants' alleged prolonged practice of making misleading statements through falsehoods and material omissions.[6] Furthermore, the "in connection with" requirement was developed by the Supreme Court to ensure that mere corporate mismanagement did. not become the basis for claims under securities laws enacted to protect purchasers of securities and the integrity of financial markets. *See Superintendent of Insurance v. Bankers Life and Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 168, 30 L.Ed.2d 128 (1971). For reasons already stated in this opinion, this concern does not impact upon the present case.

### CLAIMS UNDER SECTION 14(a) OF THE EXCHANGE ACT

■ Plaintiffs bring a claim pursuant to § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), alleging that material misrepresentations and omissions were made in connection with proxy solicitations for the election of corporate directors at the Annual Meeting of Shareholders on April 18, 1990. Complaint, Count IV. Plaintiffs seek to have the election of these directors voided due to the taint of defendants' alleged unlawful conduct during the solicitation process. Complaint, Prayer for Relief (e).

Defendants claim that plaintiffs have not pled transaction causation between the issuance of the proxies and the subject matter of the litigation—the pecuniary harm caused by the effect of defendants' representations. Defendants completely mischaracterize or misread this Count of the Complaint. The harm alleged here is that corporate directors were elected on the ba-

---

5. Thus, "soft information" does not form the basis for these allegations. Furthermore, even if the allegations in ¶ 30 of the Complaint were based on "soft information", the claims still could be actionable as "projections ... made without a reasonable basis." *In re Craftmatic Securities Litigation,* 890 F.2d at 645–646.

6. Also, given that the named plaintiffs purport to represent unnamed class members and unnamed plaintiffs remain and could be named at any time, to dismiss any allegations or Counts on this ground would be premature to say the least.

sis of materially false or misleading proxy statements. The causation alleged is perfectly clear on the face of the Complaint.

■ Defendants also advance the argument that there are no actionable misrepresentations alleged in the Complaint. The grounds for this charge are that plaintiffs have phrased their allegations as a failure to

"disclose the utter failure of the individual defendants and their co-directors to cause Midlantic to disseminate reports to the investing public and to file with the SEC documents in full compliance with the federal securities laws and to continue to overstate its earnings, certain assets and net worth by under-reserving for loan losses by at least $150 million or more."

Complaint, ¶ 56. The foundation of the defendants' argument is that the information they did not disclose was either a matter of mismanagement or too speculative and predictive and therefore is not actionable. Both these issues have been disposed of by this opinion in plaintiffs' favor with respect to the § 10(b) and Rule 10b–5 claims. For the reasons previously given in the disposition of these issues, Count IV of plaintiffs' complaint states a valid cause of action.

CLAIMS UNDER SECTION 20(a) FOR SECONDARY LIABILITY

■ Plaintiffs claim the individual defendants are secondarily liable as controlling persons pursuant to § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). *See* Complaint ¶ 7(e), (f), (g). Section 20(a) provides in pertinent part:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, . . .

15 U.S.C. § 78t(a); *see Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880, 884 (3d Cir.1975). Defendants move to dismiss this claim for failure to plead that the individual

defendants culpably participated in the wrongful acts alleged.

"By enacting Section 20(a), Congress wanted to impose liability on persons who were able to directly or indirectly exert influence on the policy and decision making process of others." *Rochez Brothers, Inc.,* 527 F.2d at 884. However, to maintain a cause of action under Section 20(a) a plaintiff must prove that the defendant, the "controlling person", engaged in "culpable participation" in the fraud. *Id.* at 885. This leaves open to the defendant a "good faith defense" that prevents directors and senior officers from becoming insurers strictly liable for the fraud of others. *Id.* (discussing *Kohn v. American Metal Climax,* 458 F.2d 255 (3d Cir.1972) (Adams, J., dissenting and concurring)).

Plaintiff has alleged control and culpability to the degree necessary to withstand a motion to dismiss. The Third Circuit has "given heavy consideration to the power or potential power to influence and control the activities of a person, as opposed to the actual exercise thereof." *Id.* at 890–891 (quoted in *In re National Smelting of New Jersey, Inc.,* 722 F.Supp. 152, 165 (D.N.J. 1989)). The SEC has defined control similarly, as "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract or otherwise." 17 C.F.R. § 240.12(b)–2(f).

Each defendant was either a director or officer of the corporation with access to information and to policy making processes during the class period. In addition, defendant Van Buren is also alleged to be the Chairman of the Board, the CEO, and a major shareholder of Midlantic. A majority of the Board is pled as defendants along with Van Buren. Substantial weight must be given to the authority, or rather the potential authority, inherent in such corporate positions, considered separately or in concert. Furthermore, prior to discovery in any meaningful sense, plaintiff can hardly be able to plead the precise culpable

conduct of each individual defendant.[7] At this stage of the litigation, plaintiffs have sufficiently pled the individual defendants' power to exercise control.

## AIDING AND ABETTING LIABILITY

Both plaintiffs and defendants agree that three elements must be proved to establish aiding and abetting liability for a securities law violation: (1) an underlying securities violation by a primary actor, (2) the party charged with aiding and abetting knew of the fraudulent conduct, and (3) the party charged substantially participated in the perpetration of the fraud. *See Walck v. American Stock Exchange, Inc.,* 687 F.2d 778, 791 (3d Cir.1982) (citing *Landy v. FDIC,* 486 F.2d 139, 162, 163 (3d Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974)); *Rochez Brothers, Inc.,* 527 F.2d at 886 (also citing *Landy*). Defendant argues that plaintiffs have failed to adequately plead the second and third elements.

As to the second element of aiding and abetting liability, knowledge of the wrongful conduct of the primary actor, this is yet again another reappearance of the scienter issue dealt with previously in this opinion. Suffice it to say that plaintiffs have met the pleading requirements for scienter[8], for no useful purpose would be served by repetition. Similarly, plaintiffs have satisfied pleading the third element of the cause of action. Not only have plaintiffs pleaded that defendants substantially participated in the fraud as aiders and abettors, they have alleged defendants are *primarily* liable as well. Complaint ¶¶ 32–33. This element is well pled, alleging the defendants were in positions of control, had access to information concerning the alleged fraudulent statements, and consciously played a substantial role in issuing those statements. *Id.*

## CLAIMS FOR NEGLIGENT MISREPRESENTATION

Defendants claim that plaintiffs' claim under New Jersey law for negligent misrepresentation must be dismissed for failure to allege actual reliance on the part of the investor-plaintiffs. New Jersey law provides that "an incorrect statement, negligently made and justifiably relied upon, may be the basis for recovery of damages for economic loss or injuries sustained as a consequence of that reliance." *Kronfeld,* 638 F.Supp. at 1467–68 (citing *Rosenblum v. Alder,* 93 N.J. 324, 334–335, 461 A.2d 138 (1983)). Defendants assert that plaintiffs failed to allege the requisite reliance. This is simply not the case. The defendants even quote the paragraph of the Complaint where the allegation is made. Plaintiffs allege, *inter alia,* "In reliance ... directly or indirectly on [defendants'] misrepresentations, in ignorance of the truth and in reliance on the superior knowledge and expertise of the defendants, the Class plaintiffs and other members of the class were induced to purchase Midlantic's securities." Complaint ¶ 52. Hence, plaintiffs plead actual reliance on the allegedly fraudulent misrepresentations themselves and not exclusively on a fraud on the market theory.[9]

---

7. Defendants cite *VT Investors v. R. & D. Funding Corp.,* 733 F.Supp. 823 (D.N.J.1990) in support of their motion to dismiss. However, in that case the § 20(a), secondary liability, counts were necessarily dismissed and moot because the Counts alleging *primary* liability were dismissed. Also, the Court stated that to plead "control liability plaintiffs must identify the relationship on which it is based." *Id.* at 841. The plaintiffs in *VT Investors* failed to do so; the plaintiffs here have succeeded.

8. *Compare Walck,* 687 F.2d at 791 (complaint dismissed where plaintiffs completely failed to plead any degree of knowledge of the primary securities law violation).

9. Defendants also seek to parse out a subtle distinction between a "business decision" and an "investment decision". These terms, as defined in *Cammer v. Blum* distinguish between an audit statement sent directly to an institutional investor to induce an investment and audit reports released to the general public for the same purpose. 711 F.Supp. 1264, 1299 & n. 57 (D.N.J.1989) (citing *Rosenblum,* 93 N.J. at 345, 461 A.2d 138). The contention is that the former investors are covered under the negligent misrepresentation doctrine while the ordinary public investor remains unprotected. *Rosenblum* makes no such distinction between these classes of equally foreseeable plaintiffs and such a distinction will not be inferred here. To the extent this opinion diverges from *Cammer,* I decline to follow it.

## DERIVATIVE CLAIMS AND PLEADING UNDER RULE 23.1

 Defendants seek dismissal of plaintiffs' shareholder derivative claims for failure to make a pre-litigation demand, pursuant to Federal Rule of Civil Procedure 23.1, on the Board of Directors to act in the best interests of the shareholders' rights. Rule 23.1 provides in relevant part:

> In a derivative action brought by one or more shareholders ... to enforce a right of a corporation ..., the corporation ... having failed to enforce a right which may properly be asserted by it, ... [t]he complaint shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors ... and, if necessary, from the shareholders ... and the reasons for his failure to obtain the action or for not making the effort. The demand requirement is not necessary where such demand would be futile.

Fed.R.Civ.P. 23.1. The issue presented here is whether plaintiffs have adequately pled that a demand on the Board would have been futile and whether making a demand on the shareholders was necessary.

According to the Third Circuit,

> "Whether [plaintiffs have] complied with the demand requirement of Rule 23.1 involves solely an examination of the amended complaint." *See In re Kaufman Mutual Fund Actions,* 479 F.2d 257, 263 & n. 4 (1st Cir.), *cert. denied,* 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). Courts will excuse the derivative plaintiff from the demand requirement when his complaint alleges that a majority of the directors have participated in the underlying wrongdoing or that the board is controlled by the alleged wrongdoers. *See Untermeyer v. Fidelity Daily Income Trust,* 580 F.2d 22, 23 (1st Cir.1978); *Cathedral Estates v. Taft Realty Corp.,* 228 F.2d 85, 88 (2d Cir.1955).

*Lewis v. Curtis,* 671 F.2d 779, 784 (3d Cir.1982). However, so that the intended effect of Rule 23 is not completely circumvented mere conclusory allegations of wrongdoing will not support an excuse of the demand requirement. *See Id.* at 785.

The Complaint, viewed as a whole, does not present such conclusory allegations. Defendants argue that the Complaint reveals nothing more than the directors' "acquiescence" in the alleged fraudulent conduct and is thus insufficient to excuse the demand requirement. This severely understates the allegations contained in the Complaint. As previously discussed in this opinion, plaintiffs have alleged causes of action against the individual defendants sounding in fraud, for both primary and secondary liability. The allegations are set forth at length and cannot be considered conclusory or as regarded as alleging that defendants were completely passive, rather than active, participants.

Furthermore, the Complaint alleges the interests served by the defendants wrongful conduct. These include efforts to: "(i) protect their executive positions and the substantial compensation and prestige they obtained thereby; (ii) conceal and cover up their past misconduct and disregard of internal control and credit control procedures; and, (iii) satisfy their personal desires for aggrandizement and their desire to cause Midlantic and its loan portfolio and assets grow." Complaint ¶ 33. Given the magnitude of the wrongdoing alleged, well pled and assumed as true for purposes of this motion, the board can be said to "lack the requisite disinterestedness to determine fairly whether the corporate claim should be pursued." *Lewis,* 671 F.2d at 785.

Defendants' cautionary argument that allowing a plaintiff to avoid the demand requirement simply by naming a majority of the directors as defendants in a contemporaneous suit is unavailing. Here, the Complaint has already been through the special pleading review under Rule 9(b). This pleading requirement is designed to screen out just the sort of frivolous suits that draw the defendants' ire and concern. Also, in this case the fraud and derivative suits were filed separately. Hence, this was not a situation that presents a threat of abusing the excuse provision to Rule 23.1, where a plaintiff files a fraud or other cause of action as a "smoke screen" for a

derivative suit brought without making a demand of the directors. The demand requirement of Rule 23.1 is therefore excused.

■ Defendants also argue that plaintiffs were required to make a demand of the Midlantic shareholders for the desired action pursuant to Rule 23.1. This requirement is not imposed directly by Rule 23.1 but, rather, by state law. Rule 23.1 was drafted to apply both in cases arising under federal law such as those underlying the bulk of plaintiffs' suit and in cases under state law such as the ordinary shareholders derivative action heard in federal court under pendent jurisdiction as is the case here. *See* Complaint ¶ 62.

The shareholder derivative action in this case is brought under New Jersey common law. Complaint ¶ 61. Thus, plaintiffs are required to make a demand of the Midlantic shareholders pursuant to Rule 4:32–5, the New Jersey equivalent of Rule 23.1, unless excused from doing so as a matter of state law. The principles for determining whether a demand on the corporation's shareholders must be made are provided by *Escoett v. Aldecress Country Club*, 16 N.J. 438, 109 A.2d 277 (1954). In *Escoett* the New Jersey Supreme Court held that the predecessor of R. 4:32–5 [10] required,

"that the complaint in a shareholder's derivative action set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort."

*Id.* at 449, 109 A.2d 277. The Court, however, drew attention to the less than categorical language of the rule, commenting that "[a]s the terms of the rule itself indicate, the requirement of application to the general body of stockholders is not absolute and will readily give way in the interests of justice." *Id.* The Court also held that "resort to the general body of stockholders would be unnecessary where it would jeopardize the cause of action or

where it affirmatively appeared to be futile or impracticable or otherwise unwarranted." *Id.*

The interests of justice seem to weigh in favor of excusing plaintiffs from making a demand on the shareholders. The logistics of contacting the shareholders of a multibillion dollar publicly held corporation and then actually organizing them into compelling the action plaintiffs seek are daunting. Also, to wait for the corporation's annual meeting entails delay and the potential expense of a bitter proxy battle. Indeed, this course of action seems particularly suspect where, as here, manipulation of the proxy system has been alleged in a well pleaded complaint.

Dismissing plaintiffs' derivative action and requiring plaintiffs to make a demand on the shareholders presents these possibilities: (1) force plaintiff to sever the derivative action, in part negating the Order consolidating all the related actions; (2) keeping all the actions consolidated and delay the disposition of the entire case. The former course of action seems to impose a burden on the courts and on the plaintiffs for scant, if any, benefits. The second course will not be entertained. Too much is at risk for the shareholders if plaintiffs' allegations are true and defendants' reputations will remain subject to question if they are false. Finally, it is in the Court's own interest to ensure the expeditious disposition of matters pending before it—including this one. The requirement pursuant to R. 4:32–5 that plaintiffs make a demand on the shareholders of Midlantic is therefore excused.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is hereby denied. An appropriate form of order will be entered.

## ORDER

This matter having been opened to the Court on the application of Pitney, Hardin, Kipp & Szuch, attorneys for defendants, for an order dismissing the Consolidated

---

**10.** This rule, R. 4:36–2, reads identically to the current R. 4:32–5.

Amended Class and Derivative Complaint, and this Court having considered the papers submitted in support of said application and in opposition thereto, in accordance with the Opinion filed on even date,

IT IS, on this 9th day of October, 1990, ORDERED as follows:

1. The motion is hereby *granted* with respect to Count II of the Complaint.

2. The remainder of defendants' motion is hereby *denied.*